# EXHIBIT A

U.S. Department of Justice
Office of Justice Programs



# Bureau of Justice Statistics
## Special Report

June 2002, NCJ 193427

# Recidivism of Prisoners Released in 1994

By Patrick A. Langan, Ph.D.
David J. Levin, Ph.D.
*BJS Statisticians*

This study of the rearrest, reconviction, and reincarceration of prisoners tracked 272,111 former inmates for 3 years after their release in 1994. The 272,111 — representing two-thirds of all prisoners released in the United States that year — were discharged from prisons in 15 States:

| | | |
|---|---|---|
| Arizona | Maryland | North Carolina |
| California | Michigan | Ohio |
| Delaware | Minnesota | Oregon |
| Florida | New Jersey | Texas |
| Illinois | New York | Virginia |

**Four measures of recidivism**

The study uses four measures of recidivism: rearrest, reconviction, resentence to prison, and return to prison with or without a new sentence. Except where expressly stated otherwise, all four study measures of recidivism —

• refer to the 3-year period following the prisoner's release in 1994
• include both "in-State" and "out-of-State" recidivism.

"In-State" recidivism refers to new offenses committed within the State that released the prisoner. "Out-of-State" recidivism refers to new offenses in States other than the one where the prisoner served time.

### Highlights

**Among nearly 300,000 prisoners released in 15 States in 1994, 67.5% were rearrested within 3 years. A study of 1983 releases estimated 62.5%.**



Offense of prisoners released in 1983 and 1994

• Within 3 years from their release in 1994 —

67.5% of the prisoners were rearrested for a new offense (almost exclusively a felony or a serious misdemeanor)

46.9% were reconvicted for a new crime

25.4% were resentenced to prison for a new crime

51.8% were back in prison, serving time for a new prison sentence or for a technical violation of their release, like failing a drug test, missing an appointment with their parole officer, or being arrested for a new crime.

• Released prisoners with the highest rearrest rates were robbers (70.2%), burglars (74.0%), larcenists (74.6%), motor vehicle thieves (78.8%), those in prison for possessing or selling stolen property (77.4%), and those in prison for possessing, using, or selling illegal weapons (70.2%).

• Released prisoners with the lowest rearrest rates were those in prison for homicide (40.7%), rape (46.0%), other sexual assault (41.4%), and driving under the influence (51.5%).

• Within 3 years, 2.5% of released rapists were arrested for another rape, and 1.2% of those who had served time for homicide were arrested for homicide.

• The 272,111 offenders discharged in 1994 had accumulated 4.1 million arrest charges before their most recent imprisonment and another 744,000 charges within 3 years of release.

Three of the recidivism measures — rearrest, reconviction, resentence to prison — are based exclusively on official criminal records kept in State and FBI criminal history repositories. One recidivism measure — return to prison with or without a new prison sentence — is formed from a combination of records from criminal history repositories plus prison records kept by State departments of corrections.

## More highlights

• Within 3 years of their release in 1994, 61.7% of offenders sentenced for violence were arrested for a new offense, though not necessarily another violent offense. Property offenders had the highest rearrest rate, 73.8%; released drug offenders, 66.7%; and public-order offenders (mostly those in prison for driving while intoxicated or a weapons offense), a 62.2% rate.

• Men were more likely to be rearrested (68.4%) than women (57.6%); blacks (72.9%) more likely than whites (62.7%); non-Hispanics (71.4%) more likely than Hispanics (64.6%); younger prisoners more likely than older ones; and prisoners with longer prior records more likely than those with shorter records.

• An estimated 7.6% of all released prisoners were rearrested for a new crime in a State other than the one that released them. They were charged with committing 55,760 such crimes.

• No evidence was found that spending more time in prison raises the recidivism rate. The evidence was mixed regarding whether serving more time reduces recidivism.

To an unknown extent, recidivism rates based on State and FBI criminal history repositories understate actual levels of recidivism. The police agency making the arrest or the court disposing of the case may fail to send the notifying document to the State or FBI repository. Even if the document is sent, the repository may be unable to match the person in the document to the correct person in the repository or may neglect to enter the new information. For these reasons, studies such as this one that rely on these repositories for complete criminal history information will understate recidivism rates.

### Characteristics of the 272,111 released prisoners

Of offenders released from prisons in 15 States in 1994:

91.3% were male (table 1)
50.4% were white
48.5% were black
24.5% were Hispanic
44.1% were under age 30.

The 272,111 were in prison for a wide variety of offenses, primarily felonies:

22.5% for a violent offense (for example, murder, sexual assault, and robbery)

33.5% for a property offense (for example, burglary, auto theft, and fraud)

32.6% for a drug offense (primarily drug trafficking and possession)

9.7% for a public-order offense (roughly 33% driving while intoxicated/driving under the influence, 32% a weapons offense, 8% a traffic offense, 9% a probation violation, and the remainder, such crimes as escape, obstruction of justice, court offense, parole violation, contributing to the delinquency of a minor, bigamy, and habitual offender)

1.7% for some other offense (for example, an unspecified felony or misdemeanor).

**Table 1. Profile of prisoners released in 1994 from prisons in 15 States**

| Characteristic | Percent of released inmates |
|---|---|
| **Gender** | |
| Male | 91.3% |
| Female | 8.7 |
| **Race** | |
| White | 50.4% |
| Black | 48.5 |
| Other | 1.1 |
| **Ethnicity** | |
| Hispanic | 24.5% |
| Non-Hispanic | 75.5 |
| **Age at release** | |
| 14-17 | 0.3% |
| 18-24 | 21.0 |
| 25-29 | 22.8 |
| 30-34 | 22.7 |
| 35-39 | 16.2 |
| 40-44 | 9.4 |
| 45 or older | 7.6 |
| **Offense for which inmate was serving a sentence** | |
| Violent | 22.5% |
| Property | 33.5 |
| Drugs | 32.6 |
| Public-order | 9.7 |
| Other | 1.7 |
| **Sentence length** | |
| Mean | 58.9 mos |
| Median | 48.0 mos |
| **Time served before release** | |
| Mean* | 20.3 mos |
| Median* | 13.3 mos |
| **Percent of sentence served before release*** | 35.2% |
| **Prior arrest** | 93.1% |
| Mean number of prior arrests | 8.8 |
| Median number | 6.0 |
| **Prior conviction** | 81.4% |
| Mean number | 3.8 |
| Median number | 3.0 |
| **Prior prison sentence** | 43.6% |
| Number released in 15 States | 272,111 |

Note: "Prior" does not include the arrest, conviction, or prison sentence for which the 272,111 were in prison in 1994. Calculation of prior conviction excludes Ohio. Calculation of sentence length (defined as total maximum sentence) and time served is based on "first releases" only and excludes Michigan (which reported minimum, not maximum, sentence) and Ohio (which did not report data to identify "first releases").
*Excludes credited jail time.

The average prison sentence length was nearly 5 years. On average, the prisoners were released after serving 35% of their sentence, or about 20 months.

Seventy percent had 5 or more prior arrests (not including the arrest that brought them to prison), and half had 2 or more prior convictions (not including the conviction that resulted in their prison sentence).

For 56.4% of the released prisoners the prison sentence they were serving when released was their first-ever sentence to prison. Almost 44% had served a prior prison sentence.

**Recidivism rates at different lengths of time after release**

Within the first 6 months of their release, 29.9% of the 272,111 offenders were rearrested for a felony or serious misdemeanor (table 2 and figure 1).

Within the first year the cumulative total grew to 44.1% and within the first 2 years, 59.2%. Within the first 3 years of their release, an estimated 67.5% of the 272,111 released prisoners were rearrested at least once.

The first year is the period when much of the recidivism occurs, accounting for nearly two-thirds of all the recidivism of the first 3 years.

Within the first year of release, an estimated 21.5% of the 272,111 released offenders were reconvicted for a new felony or misdemeanor; within the first 2 years, a combined total of 36.4% were reconvicted; and within the first 3 years, a combined total of 46.9% were reconvicted.

**Table 2. Recidivism rates of prisoners released in 1994 from prisons in 15 States, by time after release**

| Time after release | Cumulative percent of released prisoners who were — | | |
|---|---|---|---|
| | Rearrested | Reconvicted[a] | Returned to prison with new sentence[b] |
| 6 months | 29.9% | 10.6% | 5.0% |
| 1 year | 44.1 | 21.5 | 10.4 |
| 2 years | 59.2 | 36.4 | 18.8 |
| 3 years | 67.5 | 46.9 | 25.4 |

[a]Because of missing data, prisoners released in Ohio were excluded from the calculation of percent reconvicted.
[b]"New prison sentence" includes new sentences to State or Federal prisons but not to local jails. Because of missing data, prisoners released in Ohio and Virginia were excluded from the calculation of "Percent returned to prison with a new prison sentence."

Not all of the reconvicted prisoners were sentenced to another prison term for their new crime. Some were sentenced to confinement in a local jail. Some were sentenced to neither prison nor jail but to probation, which allowed them to remain free in their communities but under the supervision of a probation officer.

Within the first year of release, 10.4% of the 272,111 released prisoners were back in prison as a result of a conviction and prison sentence for a new crime; within the first 2 years, 18.8%; and within the first 3 years, 25.4%.

**The number of crimes committed by the 272,111 released prisoners**

How many crimes the 272,111 prisoners ever committed — both prior to and following their release — is unknown. The best estimate available from official sources is the volume of criminal charges found in arrest records. The volume of arrest charges is not the same thing as the volume of arrests.

The volume of arrests is the number of different times a person was arrested. The volume of arrest charges is the sum of the charges over all the different times the person was arrested.

Arrest records provide an incomplete measure of actual criminal activity. While people are sometimes arrested for crimes they did not commit, research indicates that offenders commit more crimes than their arrest records show.*

---

*Alfred Blumstein and others, *Criminal Careers and "Career Criminals,"* vol. 1, Washington, DC: National Academy Press, 1986, p. 55.



**Within a year of release from prison, 44.1% of prisoners were rearrested; within 3 years, 67.5% were rearrested and 25.4% had a new prison sentence**

*Figure 1*

**New arrest charges following release from prison**

The 67.5% of releases rearrested within 3 years, or 183,675 persons, were charged with 744,480 new crimes, or an average of 4 new crimes each (table 3). Over 100,000 were new charges for a violent crime, including 2,900 new homicides, 2,400 new kidnapings, 2,400 rapes, 3,200 other sexual assaults, 21,200 robberies, 54,600 assaults, and nearly 13,900 other violent crimes.

During the 3-year follow-up period, the released prisoners had new arrest charges for 40,300 burglaries and about 16,000 thefts of motor vehicles. They also had 79,400 new charges for drug possession, 46,200 new charges for drug trafficking, about 26,000 new charges for a weapons offense (such as illegal possession of a firearm), and approximately 5,800 new charges for driving while under the influence of drugs or alcohol.

The 744,480 new charges during the 3-year follow-up period consisted of 688,720 committed in the same State that released the prisoner plus 55,760 committed in other States.

**Old arrest charges prior to their release from prison**

Prior to entering prison, the 272,111 released prisoners had been arrested for about 4.1 million crimes, as indicated by the number of arrest charges in their criminal history files. The 4.1 million included the arrest charges that brought them to prison, plus all previous charges. Roughly 550,000 of the 4.1 million prior arrest charges were for a violent crime, including 18,000 prior charges for homicide, 10,700 prior charges for kidnaping, 44,400 prior charges for a violent sex offense (21,600 rapes and 22,800 sexual assaults), and 172,300 prior charges for robbery.

**Combining new and old arrest charges**

Over their adult criminal history (both prior to and following their release) the 272,111 offenders were arrested for nearly 4.9 million offenses altogether: 4.1 million prior to release plus nearly 0.8 million after release. That is an average of about 17.9 charges each.

A small fraction of offenders was responsible for a large number of the 4.9 million crimes. An estimated 6.4% of the prisoners were each charged with 45 or more offenses before and after their release in 1994 (table 4). These high-rate offenders accounted for nearly 14% of all arrest charges.

**Table 3. Number of arrest charges for 272,111 State prisoners released in 1994, by type of charge**

| | Number of arrest charges | | | |
|---|---|---|---|---|
| | Prior to release | | In first 3 years after release | |
| Arrest charge | In-State plus out-of-State charges | Out-of-State charges only | In-State plus out-of-State charges | Out-of-State charges only |
| All offenses | 4,132,174 | 338,877 | 744,480 | 55,760 |
| **Violent offenses** | 550,004 | 42,330 | 100,531 | 6,433 |
| Homicide* | 18,001 | 1,267 | 2,871 | 180 |
| Kidnaping | 10,733 | 1,124 | 2,362 | 151 |
| Rape | 21,638 | 2,165 | 2,444 | 181 |
| Other sexual assault | 22,778 | 1,934 | 3,151 | 332 |
| Robbery | 172,274 | 14,361 | 21,245 | 1,309 |
| Assault | 243,654 | 19,973 | 54,604 | 3,846 |
| Other violent | 60,926 | 1,505 | 13,854 | 434 |
| **Property offenses** | 1,477,442 | 120,007 | 208,451 | 15,760 |
| Burglary | 360,861 | 31,400 | 40,303 | 2,904 |
| Larceny/theft | 508,222 | 46,589 | 79,158 | 5,919 |
| Motor vehicle theft | 125,239 | 1,198 | 15,797 | 1,198 |
| Arson | 6,523 | 387 | 758 | 39 |
| Fraud | 141,636 | 19,905 | 21,360 | 2,388 |
| Stolen property | 173,731 | 13,288 | 21,993 | 2,082 |
| Other property | 161,230 | 7,240 | 29,082 | 1,230 |
| **Drug offenses** | 919,586 | 43,516 | 191,347 | 9,556 |
| Possession | 380,117 | 21,819 | 79,435 | 4,255 |
| Trafficking | 223,192 | 10,274 | 46,220 | 2,835 |
| Other/unspecified | 316,277 | 11,423 | 65,692 | 2,466 |
| **Public-order offenses** | 703,996 | 76,049 | 155,751 | 13,863 |
| Weapons | 161,318 | 11,543 | 25,647 | 1,914 |
| Probation/parole violations | 13,466 | 3,119 | 20,939 | 874 |
| Traffic offenses | 57,571 | 8,515 | 13,097 | 1,288 |
| Driving under the influence | 43,123 | 10,335 | 5,788 | 1,526 |
| Other public-order | 428,518 | 42,537 | 90,280 | 8,261 |
| **Other offenses** | 82,392 | 12,198 | 20,049 | 3,519 |
| **Unknown** | 398,754 | 44,777 | 68,351 | 6,629 |

Note: Table is based on 272,111 prisoners released in 1994 in 15 States. All had at least 1 charge prior to release, and 183,675 (67.5%) also had at least 1 charge after release.
*Homicide includes murder, nonnegligent manslaughter, and negligent manslaughter.

Offenders with 25 or more charges represented nearly 24% of all offenders but about 52% of all charges.

By contrast, released prisoners with fewer than 5 arrest charges represented nearly 14% of all prisoners but accounted for about 6.4% of the 4.9 million arrest charges.

**How many of the 272,111 were ever arrested for violence**

Although 22.5% of the 272,111 were released from prison in 1994 following an arrest and conviction for a violent crime, 53.7% of all the prisoners had a prior arrest for violence, and 21.6% were arrested for a violent crime after their release. Altogether, 67.8% of the prisoners released in 1994 had a record of violence.

Table 4. Total number of arrest charges for 272,111 State prisoners released in 1994

| Total number of arrest charges* | Percent of all released prisoners | Cumulative percent | |
|---|---|---|---|
| | | Released prisoners | Arrest charges |
| 45 or more | 6.4% | 6.4% | 13.7% |
| 35-44 | 5.6 | 12.0 | 34.4 |
| 25-34 | 11.9 | 23.9 | 52.3 |
| 20-24 | 10.1 | 34.0 | 66.1 |
| 15-19 | 13.7 | 47.7 | 76.1 |
| 10-14 | 17.9 | 65.6 | 88.1 |
| 5-9 | 20.7 | 86.3 | 93.6 |
| 1-4 | 13.7 | 100 | 100 |
| Total number | 272,111 | 272,111 | 4,876,654 |

*Arrest charges include those prior to release and those in the 3 years following release.

| Nature of violent record | Percent arrested for a violent offense |
|---|---|
| Prior arrest charge | 53.7% |
| Most serious charge when released | 22.5 |
| Arrest charge within 3 years of release | 21.6 |
| Ever charged | 67.8 |

Note: "Prior" does not include the arrest that ultimately led to the 272,111 being in prison in 1994.

Table 5. Percent of adult arrests that prisoners released in 1994 in 13 States accounted for following their release

| | Arrests in the 13 States for 7 crimes from 1994 to 1997 | | |
|---|---|---|---|
| Year arrested | Total | Number accounted for by released prisoners in the 13 States[a] | Percent of all arrests for the 7 crimes that the released prisoners accounted for |
| Total, 1994-1997 | 2,994,868 | 140,534 | 4.7% |
| 1994[b] | 462,793 | 28,411 | 6.1 |
| 1995 | 899,582 | 43,682 | 4.9 |
| 1996 | 840,980 | 34,800 | 4.1 |
| 1997 | 791,513 | 33,641 | 4.3 |

Note: Number of arrests is based on 234,358 released prisoners. Arrests of these released prisoners in 1997 are counted in the 1997 figures regardless of whether the arrest occurred beyond the 3-year follow-up period.
[a]Includes only arrests in the State in which the prisoner was released. For arrests involving multiple charges, only the most serious charge was counted. The 7 crimes, listed from most to least serious, are: murder (including nonnegligent manslaughter), rape, robbery, aggravated assault, burglary, larceny, and motor vehicle theft.
[b]Because on average there were 6 months of exposure to rearrest, the estimated total number of arrests in 1994 was divided by 2.

The 67.8% is less than the sum of three categories — 22.5% in prison for violence plus 53.7% with prior violence plus 21.6% rearrested for violence — because some prisoners were in more than one category.

**The fraction of all crimes that released prisoners accounted for**

The study cannot measure precisely what fraction of all crime the former prisoners were responsible for during the 3 years following their release. The closest measure is the fraction of all arrests for seven serious crimes (murder, rape, robbery, aggravated assault, burglary, larceny, and motor vehicle theft). The number of "arrests" is not the number of "arrest charges" but the number of different days on which a person was arrested.

In 13 States (because of missing data Florida and Illinois could not be in this analysis) from 1994 to 1997, 234,358 released prisoners accounted for 140,534 arrests (table 5). During the period in the 13 States, 2,994,868 adults were arrested for the 7 serious crimes according to the FBI.

Table 6. Percent of adult arrests for 7 crimes that released prisoners in 13 States accounted for, by type of crime and year

| | Year of arrest and percent of adult arrests in 13 States that were arrests of prisoners released in 1994 | | | | |
|---|---|---|---|---|---|
| Crime arrested for | Total 1994-97 | 1994 | 1995 | 1996 | 1997 |
| Murder and nonnegligent manslaughter | 7.7% | 10.9% | 8.4% | 6.5% | 5.8% |
| Rape | 4.4 | 5.4 | 5.6 | 3.3 | 3.6 |
| Robbery | 9.0 | 9.9 | 9.2 | 7.5 | 10.0 |
| Aggravated assault | 4.5 | 4.4 | 4.6 | 4.3 | 4.6 |
| Burglary | 7.5 | 12.4 | 7.5 | 6.3 | 5.7 |
| Larceny/theft | 3.2 | 4.2 | 3.4 | 2.8 | 3.0 |
| Motor vehicle theft | 6.2 | 9.9 | 6.1 | 5.6 | 4.7 |

Note: For each percentage the numerator is the number of arrests for the crime among prisoners released in 1994 in the 13 States, and the denominator is the estimated total number of adult arrests for the crime in the 13 States. Also, percentages for 1994 were adjusted for the partial-year exposure to rearrest. The number of arrests is based on 234,358 released prisoners. Arrests of these released prisoners in 1997 are counted in the 1997 figures even if the arrest occurred beyond the 3-year follow-up period.

Table 7. Number of out-of-State rearrest charges against prisoners released in 1994 in 14 States, by State where rearrested

| State of rearrest | Out-of-State rearrest charges | State of rearrest | Out-of-State rearrest charges |
|---|---|---|---|
| Total | 55,760 | Nebraska | 0 |
| Alabama | 573 | Nevada | 2,288 |
| Alaska | 45 | New Hampshire | 25 |
| Arizona | 3,943 | New Jersey | 424 |
| Arkansas | 320 | New Mexico | 1,040 |
| California | 3,819 | New York | 5,858 |
| Colorado | 1,506 | North Carolina | 284 |
| Connecticut | 530 | North Dakota | 96 |
| Delaware | 414 | Ohio | 1,477 |
| District of Columbia | 1,596 | Oklahoma | 641 |
| Florida | 1,101 | Oregon | 165 |
| Georgia | 3,447 | Pennsylvania | 2,907 |
| Hawaii | 209 | Rhode Island | 17 |
| Idaho | 345 | South Carolina | 2,623 |
| Illinois | 1,285 | South Dakota | 168 |
| Indiana | 314 | Tennessee | 717 |
| Iowa | 0 | Texas | 1,633 |
| Kansas | 424 | Utah | 1,919 |
| Kentucky | 923 | Vermont | 33 |
| Louisiana | 945 | Virginia | 2,152 |
| Maine | 19 | Washington | 2,805 |
| Maryland | 1,082 | West Virginia | 106 |
| Massachusetts | 139 | Wisconsin | 1,713 |
| Michigan | 489 | Wyoming | 128 |
| Minnesota | 744 | Federal | 114 |
| Mississippi | 379 | Guam | 0 |
| Missouri | 1,249 | Puerto Rico | 31 |
| Montana | 141 | Virgin Islands | 9 |
|  |  | Unknown | 406 |

Note: The data pertain just to out-of-State rearrest charges among prisoners released from prisons in 14 States in 1994; charges against New York released prisoners could not be included. Rearrest charges in the same State that had released the prisoner were not included.

Therefore, rearrests of the released prisoners were 4.7% of all arrests for serious crime from 1994 to 1997.

According to arrest records compiled in this study, of the 272,111 prisoners released in 1994, 719 were rearrested for homicide in the 13 States in 1995. The FBI reports that the number of adult arrests for homicide in the 13 States in 1995 was 8,521 altogether. The released prisoners accounted for 8.4% of all the homicides in the 13 States in 1995 (table 6). Similarly, prisoners released in 1994 accounted for 5.4% of all the arrests for rape in the 13 States in 1994 and 9.0% of all the arrests for robbery in the 13 States from 1994 to 1997.

Although these percentages may seem small, they are actually the product of high rates of criminality. For example, to account for the 8.4% of 1995 homicides, the 234,358 released prisoners were arrested for homicide at a rate 53 times higher than the homicide arrest rate for the adult population. Note also that the 8.4% does not include homicides by
(a) prisoners released in 1995,
(b) prisoners released before 1994, or
(c) released prisoners who had crossed State lines. The percentage of homicides attributable to released prisoners would be substantially greater if it included persons in categories *a, b,* and *c.*

**Released prisoners who crossed State lines to commit new crimes**

Some released prisoners crossed State lines and committed new crimes. For example, some of the prisoners released in Delaware in 1994 were arrested for new crimes in Pennsylvania in 1995; Oregon released some prisoners in 1994 who were rearrested in 1996 for new crimes in the State of Washington.

For 14 of the 15 States in the study (all but New York), it was possible to determine what fraction of the released prisoners had at least one out-of-State arrest for a new crime. These 14 States account for 241,810 of the 272,111 released prisoners.

Within 3 years following their release, just over 7.6% of the 241,810 — or 18,460 released prisoners — were rearrested for a new crime committed in a State other than the one that released them. The 7.6% consisted of about 3.9% rearrested both in the State that released them and in another State (9,500 persons) plus an additional 3.7% only rearrested in another State (8,960 persons). The 18,460 are distinct from the 144,738 only rearrested in the State that released them.

The 18,460 released prisoners were rearrested for committing a total of 55,760 new crimes outside the State that released them. An estimated 5,858 of the new crimes were committed in New York by prisoners who had been released in the study's 14 other States (table 7). Other States most affected by released prisoners crossing State lines to commit crimes were Arizona (3,943 new crimes by released prisoners from other States in this study), California (3,819), Georgia (3,447), Pennsylvania (2,907), Washington (2,805), South Carolina (2,623), Nevada (2,288), Virginia (2,152), Utah (1,919), Texas (1,633), and the District of Columbia (1,596).

A variety of factors such as large size and proximity to other States in the study explains why States like New York, California, and Arizona stand out. For example, a relatively large number of the new arrests took place in Georgia, which was not in the study. But Georgia is close to two States in the study, North Carolina and Florida.

Table 8. Rate of recidivism of State prisoners released in 1994, by prisoner characteristics

| Prisoner characteristic | Percent of all released prisoners | Percent of released prisoners who, within 3 years, were — | | | |
|---|---|---|---|---|---|
| | | Re-arrested | Recon-victed[a] | Returned to prison with a new prison sentence[b] | Returned to prison with or without a new prison sentence[c] |
| All released prisoners | 100% | 67.5% | 46.9% | 25.4% | 51.8% |
| **Gender** | | | | | |
| Male | 91.3% | 68.4% | 47.6% | 26.2% | 53.0% |
| Female | 8.7 | 57.6 | 39.9 | 17.3 | 39.4 |
| **Race** | | | | | |
| White | 50.4% | 62.7% | 43.3% | 22.6% | 49.9% |
| Black | 48.5 | 72.9 | 51.1 | 28.5 | 54.2 |
| Other | 1.1 | 55.2 | 34.2 | 13.3 | 49.5 |
| **Ethnicity** | | | | | |
| Hispanic | 24.5% | 64.6% | 43.9% | 24.7% | 51.9% |
| Non-Hispanic | 75.5 | 71.4 | 50.7 | 26.8 | 57.3 |
| **Age at release** | | | | | |
| 14-17 | 0.3% | 82.1% | 55.7% | 38.6% | 56.6% |
| 18-24 | 21.0 | 75.4 | 52.0 | 30.2 | 52.0 |
| 25-29 | 22.8 | 70.5 | 50.1 | 26.9 | 52.5 |
| 30-34 | 22.7 | 68.8 | 48.8 | 25.9 | 54.8 |
| 35-39 | 16.2 | 66.2 | 46.3 | 24.0 | 52.0 |
| 40-44 | 9.4 | 58.4 | 38.0 | 18.3 | 50.0 |
| 45 or older | 7.6 | 45.3 | 29.7 | 16.9 | 40.9 |
| Number of released prisoners | 272,111 | 272,111 | 260,226 | 254,720 | 227,788 |

Note: Data on sex were reported for 100% of 272,111 releases, data on race for 97.6%, Hispanic origin for 81.9%, and age at release for 99.9%.
[a]Because of missing data, prisoners released in 1 State (Ohio) were excluded from the calculation of "Percent reconvicted."
[b]"New prison sentence" does include new sentences to State or Federal prisons but does not include sentences to local jails. Because of missing data, prisoners released in 2 States (Ohio and Virginia) were excluded from the calculation of "Percent returned to prison with a new prison sentence."
[c]"With or without a new prison sentence" includes both prisoners with new sentences to State or Federal prisons plus prisoners returned for technical violations. Because of missing data, prisoners released from 6 States (Arizona, Delaware, Maryland, New Jersey, Ohio, and Virginia) were excluded from the calculation of "Percent returned to prison with or without a new prison sentence." New York State custody records did not always distinguish prison returns from jail returns. Consequently, some persons received in New York jails were probably mistakenly classified as prison returns. Also, California with a relatively high return-to-prison rate affects the overall rate of 51.8%. When California is excluded, the return-to-prison rate falls to 40.1%.

**Overall recidivism rate for the 272,111**

*Rearrest* — An estimated 67.5% of the 272,111 released prisoners were rearrested for a new crime (either a felony or a serious misdemeanor) within 3 years following their release (table 8).

*Reconviction* — A total of 46.9% were reconvicted in State or Federal court for a new crime (a felony or misdemeanor).

*Resentence* — Over a quarter — 25.4% — were back in prison as a result of another prison sentence. Sentences to State or Federal prisons but not to local jails are included in the 25.4%.

*Return to prison with or without a new prison sentence* — A total of 51.8% were back in prison because they had received another prison sentence or because they had violated a technical condition of their release, such as failing a drug test, missing an appointment with their parole officer, or being rearrested for a new crime. The percentage returned to prison solely for a technical violation, 26.4%, is approximated by taking the difference between the 51.8% and the 25.4%.

**Recidivism rate according to demographic characteristics**

**Gender**   Men were more likely than women to be —

*rearrested* (68.4% versus 57.6%)
*reconvicted* (47.6% versus 39.9%)
*resentenced* to prison for a new crime (26.2% versus 17.3%)
*returned to prison* with or without a new prison sentence (53.0% versus 39.4%).

**Race**   Blacks were more likely than whites to be —

*rearrested* (72.9% versus 62.7%)
*reconvicted* (51.1% versus 43.3%)
*returned to prison* with a new prison sentence (28.5% versus 22.6%)
*returned to prison* with or without a new prison sentence (54.2% versus 49.9%).

**Hispanic origin**   Non-Hispanics were more likely than Hispanics to be —

*rearrested* (71.4% versus 64.6%)
*reconvicted* (50.7% versus 43.9%)
*returned to prison* with or without a new prison sentence (57.3% versus 51.9%).

However, Hispanics (24.7%) and non-Hispanics (26.8%) did not differ significantly in terms of likelihood of being returned to prison with a new prison sentence.

**Age**   The younger the prisoner when released, the higher the rate of recidivism. For example, over 80% of those under age 18 were rearrested, compared to 45.3% of those 45 or older.

**What they were in prison for**

Of the 272,111 offenders, 1.7% were in prison for homicide (table 9). Following their release, 40.7% of these convicted homicide offenders were rearrested for a new crime (not necessarily a new homicide) within 3 years.

Convicted rapists made up 1.2% of the 272,111, and 46.0% of these released rapists were rearrested within 3 years for some type of felony or serious misdemeanor (not necessarily another violent sex offense).

*Recidivism of Prisoners Released in 1994*   7

**Table 9. Rate of recidivism of State prisoners released in 1994, by most serious offense for which released**

| Most serious offense for which released | Percent of all released prisoners | Percent of released prisoners who, within 3 years, were — | | | |
|---|---|---|---|---|---|
| | | Re-arrested | Recon-victed[a] | Returned to prison with a new prison sentence[b] | Returned to prison with or without a new prison sentence[c] |
| All released prisoners | 100% | 67.5% | 46.9% | 25.4% | 51.8% |
| **Violent offenses** | 22.5% | 61.7% | 39.9% | 20.4% | 48.8% |
| Homicide | 1.7 | 40.7 | 20.5 | 10.8 | 31.4 |
| Kidnaping | 0.4 | 59.4 | 37.8 | 25.1 | 29.5 |
| Rape | 1.2 | 46.0 | 27.4 | 12.6 | 43.5 |
| Other sexual assault | 2.4 | 41.4 | 22.3 | 10.5 | 36.0 |
| Robbery | 9.9 | 70.2 | 46.5 | 25.0 | 54.7 |
| Assault | 6.5 | 65.1 | 44.2 | 21.0 | 51.2 |
| Other violent | 0.4 | 51.7 | 29.8 | 12.7 | 40.9 |
| **Property offenses** | 33.5% | 73.8% | 53.4% | 30.5% | 56.4% |
| Burglary | 15.2 | 74.0 | 54.2 | 30.8 | 56.1 |
| Larceny/theft | 9.7 | 74.6 | 55.7 | 32.6 | 60.0 |
| Motor vehicle theft | 3.5 | 78.8 | 54.3 | 31.3 | 59.1 |
| Arson | 0.5 | 57.7 | 41.0 | 20.1 | 38.7 |
| Fraud | 2.9 | 66.3 | 42.1 | 22.8 | 45.4 |
| Stolen property | 1.4 | 77.4 | 57.2 | 31.8 | 62.1 |
| Other property | 0.3 | 71.1 | 47.6 | 28.5 | 40.0 |
| **Drug offenses** | 32.6% | 66.7% | 47.0% | 25.2% | 49.2% |
| Possession | 7.5 | 67.5 | 46.6 | 23.9 | 42.6 |
| Trafficking | 20.2 | 64.2 | 44.0 | 24.8 | 46.1 |
| Other/unspecified | 4.9 | 75.5 | 60.5 | 28.8 | 71.8 |
| **Public-order offenses** | 9.7% | 62.2% | 42.0% | 21.6% | 48.0% |
| Weapons | 3.1 | 70.2 | 46.6 | 24.3 | 55.5 |
| Driving under the influence | 3.3 | 51.5 | 31.7 | 16.6 | 43.7 |
| Other public-order | 3.3 | 65.1 | 48.0 | 24.4 | 43.6 |
| **Other offenses** | 1.7% | 64.7% | 42.1% | 20.7% | 66.9% |

[a]Because of missing data, prisoners released in 1 State (Ohio) were excluded from the calculation of "Percent reconvicted."
[b]"New prison sentence" does include new sentences to State or Federal prisons but does not include sentences to local jails. Because of missing data, prisoners released in 2 States (Ohio and Virginia) were excluded from the calculation of "Percent returned to prison with a new prison sentence."
[c]"With or without a new prison sentence" includes both prisoners with new sentences to State or Federal prisons plus prisoners returned for technical violations. Because of missing data, prisoners released from 6 States (Arizona, Delaware, Maryland, New Jersey, Ohio, and Virginia) were excluded from the calculation of "Percent returned to prison with or without a new prison sentence." New York State custody records did not always distinguish prison returns from jail returns. Consequently, some persons received in New York jails were probably mistakenly classified as prison returns. Also, California with a relatively high return-to-prison rate affects the overall rate of 51.8%. When California is excluded, the return-to-prison rate falls to 40.1%.

Over a third of the released prisoners had been in prison for a property offense (for example, burglary, auto theft, fraud). Released property offenders had higher recidivism rates than those released for violent, drug, or public-order offenses. An estimated 73.8% of the property offenders released in 1994 were rearrested within 3 years, compared to 61.7% of the violent offenders, 62.2% of the public-order offenders, and 66.7% of the drug offenders. Property offenders also had higher rates of reconviction and reincarceration than other types of offenders.

Released prisoners with the highest rearrest rates were —

robbers (70.2%)
burglars (74.0%)
larcenists (74.6%)
motor vehicle thieves (78.8%)
possessors/sellers of
    stolen property (77.4%)
possessors/sellers of
    illegal weapons (70.2%).

What these high-rate offenders have in common is that they were all in prison for what are generally thought of as crimes for money. By contrast, many of those with the lowest rearrest rates — persons convicted of homicide (40.7%), rapists (46.0%), other sexual assaulters (41.4%), other violent offenders (51.7%), and those convicted of driving under the influence (51.5%) — were in prison for crimes not generally motivated by desire for material gain.

An exception to the pattern was drug traffickers. Their motive often is to make money, yet their rearrest rate (64.2%) was not above average.

**What prisoners were rearrested for**

Within the first 3 years of the release, of the 272,111 prisoners —

21.6% were rearrested for a violent offense
31.9%, for a property offense
30.3%, for a drug offense
28.3%, for a public-order offense (table 10).

These four percentages exceed 67.5% of released prisoners overall because some were rearrested for more than one type of offense. For example, a released Minnesota prisoner was rearrested for receiving stolen property (a property offense) in 1995 and for assault (a violent offense) in 1996. Similarly, a released Delaware prisoner was rearrested for cocaine trafficking (a drug offense) in 1995 and then for aggravated assault (a violent offense) in 1996.

Within the first 3 years of release, of the 272,111 prisoners —

0.8% were rearrested for homicide
0.6%, for rape
13.7%, for assault
9.9%, for burglary.

Within 3 years, 2.5% of the 3,138 released rapists were rearrested for another rape, and 1.2% of the 4,443 persons who had served time for homicide were rearrested for a homicide. Among other offenses, the

**Table 10. Rearrest rates of State prisoners released in 1994, by most serious offense for which released and charge at rearrest**

| | Percent of prisoners rearrested within 3 years of release whose most serious offense at time of release was — | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Violent offense | | | | | Property offense | | | | | | |
| Rearrest charge | All offenses[a] | Total[b] | Homicide[c] | Rape[d] | Robbery | Assault[d] | Total[e] | Burglary | Larceny/theft | Motor vehicle theft | Fraud | Drug offense[f] | Public-order offense[g] |
| All charges[a] | 67.5% | 61.7% | 40.7% | 46.0% | 70.2% | 65.1% | 73.8% | 74.0% | 74.6% | 78.8% | 66.3% | 66.7% | 62.2% |
| **Violent offenses[b]** | 21.6% | 27.5% | 16.7% | 18.6% | 29.6% | 31.4% | 21.9% | 21.9% | 22.3% | 26.5% | 14.8% | 18.4% | 18.5 |
| Homicide[c] | 0.8 | 1.1 | 1.2 | 0.7 | 1.1 | 1.6 | 0.8 | 0.7 | 0.6 | 2.4 | 0.5 | 0.7 | 0.6 |
| Rape[d] | 0.6 | 1.1 | 0 | 2.5 | 1.2 | 1.0 | 0.7 | 0.8 | 0.5 | 1.6 | 0.3 | 0.3 | 0.4 |
| Robbery | 6.2 | 8.5 | 3.4 | 3.9 | 13.4 | 6.1 | 6.3 | 5.9 | 7.3 | 8.4 | 3.3 | 4.9 | 4.6 |
| Assault[d] | 13.7 | 16.4 | 11.9 | 8.7 | 15.1 | 22.0 | 13.7 | 13.8 | 14.4 | 16.1 | 9.0 | 12.4 | 12.1 |
| **Property offenses[e]** | 31.9% | 25.5% | 10.8% | 14.8% | 32.9% | 25.6% | 46.3% | 45.4% | 47.8% | 45.7% | 44.8% | 24.0% | 22.9% |
| Burglary | 9.9 | 6.9 | 2.0 | 4.4 | 8.7 | 7.7 | 17.6 | 23.4 | 13.9 | 11.1 | 9.1 | 5.5 | 5.0 |
| Larceny/theft | 16.3 | 12.0 | 4.1 | 6.2 | 16.5 | 10.6 | 26.1 | 23.0 | 33.9 | 18.9 | 23.4 | 11.5 | 8.9 |
| Motor vehicle theft | 4.5 | 3.9 | 1.0 | 2.3 | 5.3 | 4.4 | 6.0 | 5.5 | 4.7 | 11.5 | 4.5 | 3.5 | 4.1 |
| Fraud | 4.7 | 3.2 | 2.1 | 1.8 | 4.0 | 3.2 | 7.1 | 5.1 | 6.8 | 6.6 | 19.0 | 3.3 | 5.1 |
| **Drug offenses[f]** | 30.3% | 22.6% | 13.0% | 11.2% | 29.4% | 21.5% | 27.2% | 27.6% | 27.1% | 33.9% | 18.5% | 41.2% | 22.1% |
| **Public-order offenses[g]** | 28.3% | 27.4% | 17.7% | 20.5% | 29.3% | 31.1% | 29.2% | 30.3% | 25.5% | 33.5% | 26.3% | 27.7% | 31.2% |
| Number of released prisoners | 272,111 | 61,107 | 4,443 | 3,138 | 26,862 | 17,708 | 91,061 | 41,257 | 26,259 | 9,478 | 7,853 | 88,516 | 26,329 |

Note: The numerator for each percent is the number of persons rearrested for a new charge, and the denominator is the number released for each type of offense. Detail may not add to totals because persons may be rearrested for more than one type of charge.
[a] All offenses include any offense type listed in footnotes b through g plus "other" and "unknown" offenses.
[b] Total violent offenses include homicide, kidnaping, rape, other sexual assault, robbery, assaults, and other violence.
[c] Homicide includes murder, voluntary manslaughter, vehicular manslaughter, negligent manslaughter, nonnegligent manslaughter, unspecified manslaughter, and unspecified homicide.
[d] Does not include sexual assault.
[e] Total property offenses include burglary, larceny, motor vehicle theft, fraud, forgery, embezzlement, arson, stolen property, and other forms of property offenses.
[f] Drug offenses include drug trafficking, drug possession, and other forms of drug offenses.
[g] Public-order offenses include traffic offenses, weapon offenses, probation and parole violations, court-related offenses, disorderly conduct, and other such offenses.

percentages rearrested for the same category of offense for which they were just in prison were —

13.4% of released robbers
22.0% of released assaulters
23.4% of released burglars
33.9% of released larcenists
11.5% of released thieves of motor vehicles
19.0% of released defrauders
41.2% of released drug offenders.

Of the 3,138 released rapists —

overall 46.0% were rearrested for a new crime within 3 years
18.6% were rearrested for a new violent offense
2.5% were rearrested for another rape
8.7% were rearrested for a new non-sexual assault
11.2% were rearrested for a drug offense.

**Specialists**

"Specialists" are prisoners who, after being released, commit the same crime they were just in prison for, while "non-specialists" are those whose new offense differs from what they were in prison for. Degrees of both specialization and non-specialization can be seen in the types of offenses the prisoners were rearrested for following their release.

For example, a degree of specializing is evident in the fact that, of all the different offense categories, the released robber was the one most likely to be rearrested for robbery (13.4%), the released assaulter was the one most likely to be rearrested for assault (22.0%), the released burglar was the one most likely to be rearrested for burglary (23.4%), and the released motor vehicle thief was the one most likely to be rearrested for vehicle theft (11.5%).

There is also ample reason for viewing the released prisoners as non-specialists. For example, of the 4,443 prisoners who were in prison for killing someone, more were subsequently rearrested for a property offense (10.8%) or drug offense (13.0%) than were rearrested for another homicide (1.2%). Of the 3,138 released rapists, more were rearrested for something other than rape (for example, 8.7% for nonsexual assault and 6.2% for theft) than were rearrested for another rape (2.5%).

Another way of investigating specialization is with odds ratios. To illustrate, of the 3,138 released rapists, 78 (2.5%) were rearrested for rape, and the remaining 3,060 were either rearrested for something else or not rearrested. The odds of a released rapist being

*Recidivism of Prisoners Released in 1994*   9

**Table 11. Relative likelihood of rearrest for same offense as release offense, among State prisoners released in 1994**

| Rearrest charge | Relative likelihood of rearrest |
|---|---|
| **Violent offenses** | 1.3 |
|   Homicide | 1.4 |
|   Rape | 4.2 |
|   Other sexual assault | 5.9 |
|   Robbery | 2.7 |
|   Assault | 1.9 |
| **Property offenses** | 2.7 |
|   Burglary | 3.7 |
|   Larceny/theft | 3.0 |
|   Motor vehicle theft | 2.9 |
|   Fraud | 5.3 |
|   Stolen property | 3.4 |
| **Drug offenses** | 2.1 |
| **Public-order offenses** | 1.2 |

Note: Each ratio expresses the odds of rearrest among prisoners released on a similar offense relative to the odds of rearrest among those released on a different type of offense. For each type of rearrest charge, the numerator is the odds of rearrest for that charge among prisoners released for the same type of offense; the denominator is the odds of rearrest for that charge among prisoners released for a different type of offense.

rearrested for rape are ((78 / 3,138) / ((3,138-78) / 3,138)), or .0254902. By contrast, of the 268,631 non-rapists (the 268,631 does not include 342 released prisoners who were in prison for an unknown offense), 1,639 were rearrested for rape, and the remaining 266,814 were either rearrested for something else or were not rearrested. Their odds of being rearrested for rape are ((1,639 / 268,631) / ((268,631-1,639) / 268,631)), or .0061387. The ratio of the two odds — .0254902 / .0061387 — indicates that a rapist's odds are 4.2 times a non-rapist's odds of being rearrested for rape (.0254902 / .0061387 = 4.2) (table 11).

Odds ratios are frequently misinterpreted. The "4.2" does not mean that a rapist's odds of committing a new rape are 4.2 times "greater" than a non-rapist's odds. A released rapist's odds of committing a new rape are actually 3.2 (not 4.2) times greater than a non-rapist's odds of a rape. Either statistic — 4.2 or 3.2 — suggests a degree of specializing among rapists. A degree of specializing is evident in the statistics for other offenses as well. For example, a released robber's odds of rearrest for robbery are 2.7 times a non-robber's odds of rearrest for robbery. Put another way, a released robber's odds of repeating his crime are 1.7 times "greater" than the odds of a non-robber leaving prison and committing a robbery. Similarly, the odds of a released violent offender being rearrested for another violent crime are 1.3 times the odds (or 30% "greater" than the odds) of a nonviolent offender being arrested for a violent crime.

### Number of prior arrests

The number of times a prisoner has been arrested in the past is a good predictor of whether that prisoner will continue to commit crimes after being released. Prisoners with just 1 prior arrest have a 40.6% rearrest rate within 3 years (table 12). With 2 priors, the percentage rearrested is 47.5%. With 3 it goes up to 55.2%. With additional priors, it continues to rise, reaching 82.1% among released prisoners with more than 15 prior arrests in their criminal history record.

The number of past arrests a prisoner has also provides a good predictor of how quickly that prisoner will resume his or her criminality after being released. A measure of how quickly prisoners resume their criminality can be constructed by combining information from 1-year and 3-year arrest rates.

To illustrate: Prisoners with 1 prior arrest have a 20.6% 1-year arrest rate and a 40.6% 3-year rearrest rate. The first-year rate (20.6%) is 51% of the cumulative rate at the end of the third year (40.6%). In other words, 51% of the recidivism of prisoners with 1 prior arrest occurs within the first year. The comparable figure for prisoners with 2 priors is 55%; 3 priors, 58%; 4 priors, 59%; 5 priors, 62%. Among those with 16 or more prior arrests, 74% of their recidivism occurs in the first year ( 61.0% / 82.1% = 74%). The pattern here is clear: the longer the prior record, the greater the likelihood that the recidivating prisoner will commit another crime soon after release.

### Prior prison sentence

For 56% of the 272,111, the prison sentence they were serving when released in 1994 was their first-ever prison sentence (not shown in table). Of these "first- timers," 63.8% were rearrested following their release. Among those who had been in prison at least once before, a higher percentage — 73.5% — were rearrested.

**Table 12. Rearrest rates of State prisoners released in 1994, by number of prior arrests**

| Number of arrests prior to release | Percent of all releases | Percent of releases who were rearrested within — | |
|---|---|---|---|
| | | 3 years | 1 year |
| All released prisoners | 100% | 67.5% | 44.2% |
| 1 prior arrest | 6.9 | 40.6 | 20.6 |
| 2 | 7.4 | 47.5 | 26.2 |
| 3 | 7.8 | 55.2 | 32.2 |
| 4 | 7.7 | 59.6 | 35.1 |
| 5 | 7.7 | 64.2 | 39.7 |
| 6 | 7.4 | 67.4 | 43.2 |
| 7-10 | 20.9 | 70.3 | 45.5 |
| 11-15 | 16.2 | 79.1 | 54.5 |
| 16 or more | 18.0 | 82.1 | 61.0 |

Note: Percents are based on 272,111 released prisoners. By definition, all 272,111 had at least one arrest prior to their release. Consequently, "0 prior arrests" does not apply.

**Time served in prison**

No evidence was found that spending more time in prison raises the recidivism rate. The evidence was mixed regarding the question of whether spending more time in prison reduces the recidivism rate.

Recidivism rates did not differ significantly among those released after serving 6 months or less (66.0%), those released after 7 to 12 months (64.8%), those released after 13 to 18 months (64.2%), those released after 19 to 24 months (65.4%), and those released after 25 to 30 months (68.3%) (table 13).

Those who served the longest time — 61 months or more — had a significantly lower rearrest rate (54.2%) than every other category of prisoners defined by time in confinement.

Also, both those who served 31 to 36 months (62.6%) and those who served 37 to 60 months (63.2%) had a significantly lower rearrest rate than those who served 25 to 30 months (68.3%).

**Methodology**

*Step 1: Draw the sample*

In 1998 BJS (the Bureau of Justice Statistics in the U.S. Department of Justice) asked 15 State departments of corrections to participate in a national study of recidivism by supplying BJS with information on all prison releases in 1994. (For Illinois, releases were for fiscal year 1994 rather than calendar year 1994.) The States are large and diverse, collectively accounting for the majority of prisoners released in 1994.

Eleven of the 15 were chosen because they were in an earlier BJS recidivism study (*Recidivism of Prisoners Released in 1983*, April 1989, NCJ 116261). Inclusion of the 11 makes possible a comparison of recidivism

**Table 13. Rate of rearrest of 162,195 State prisoners released in 1994, by time served in prison**

| Time served in prison | Percent of all "first releases" All | Rearrested within 3 years |
|---|---|---|
| Total | 100% | 64.6% |
| 6 months or less | 23.5 | 66.0 |
| 7-12 | 25.8 | 64.8 |
| 13-18 | 15.6 | 64.2 |
| 19-24 | 9.5 | 65.4 |
| 25-30 | 6.8 | 68.3 |
| 31-36 | 4.7 | 62.6 |
| 37-60 | 9.6 | 63.2 |
| 61 months or more | 4.5 | 54.2 |

Note: A first release includes only those offenders leaving prison for the first time since beginning their sentence. It excludes those who left prison in 1994 but who had previously been released under the same sentence and had returned to prison for violating the conditions of release. The table excludes Michigan and Ohio releases.

**Comparison of recidivism rates for prisoners released in 1983 and 1994**

In a previous BJS study, 108,580 State prisoners released from prison in 11 States in 1983 were tracked for 3 years (Allen J. Beck and Bernard E. Shipley, *Recidivism of Prisoners Released in 1983*, BJS Special Report, NCJ 116261, April 1989). All 11 are among the 15 States in this report.

**Rearrest**  The overall rearrest rate rose significantly. Of the 108,580 prisoners released in 1983, 62.5% were rearrested within 3 years. Of the 272,111 released in 1994, the figure is 67.5%. Likewise, there was a significant rise from 1983 to 1994 in the rearrest rate for released property offenders (68.1% and 73.8%, respectively), released drug offenders (50.4% and 66.7%), and released public-order offenders (54.6% and 62.2%). However, the rearrest rate did not rise significantly for released violent offenders (59.6% and 61.7%).

**Reconviction**  The overall reconviction rate did not change significantly. Among prisoners released in 1983, 46.8% were subsequently reconvicted; among those released in 1994, 46.9%.

Likewise, the reconviction rate did not change between 1983 and 1994 for released violent offenders (41.9% and 39.9%), released property offenders (53.0% and 53.4%), and released public-order offenders (41.5% and 42.0%).

The only significant change in reconviction rates was the increase for drug offenders. Among drug offenders released in 1983, 35.3% were reconvicted for a new crime (not necessarily another drug offense). Among those released in 1994, the reconviction percentage was higher — 47.0%.

**Recidivism rates by offense type and year of release**

| Most serious offense for which released | Percent of prisoners released in — 1983 | 1994 | Percent rearrested within 3 years, among prisoners released in — 1983 | 1994 | Percent reconvicted within 3 years, among prisoners released in — 1983 | 1994 |
|---|---|---|---|---|---|---|
| All released prisoners | 100% | 100% | 62.5% | 67.5% | 46.8% | 46.9% |
| Violent | 34.6 | 22.5 | 59.6 | 61.7 | 41.9 | 39.9 |
| Property | 48.3 | 33.5 | 68.1 | 73.8 | 53.0 | 53.4 |
| Drug | 9.5 | 32.6 | 50.4 | 66.7 | 35.3 | 47.0 |
| Public-order | 6.4 | 9.7 | 54.6 | 62.2 | 41.5 | 42.0 |
| Other | 1.1 | 1.7 | 76.8 | 64.7 | 62.9 | 42.1 |
| Number of released prisoners | 108,580 | 272,111 | | | | |

rates between prisoners released in 1994 and those released earlier.

Altogether the 15 States released 302,309 prisoners in 1994. The 15 States supplied BJS with a computerized record on each of the 302,309 containing the prisoner's name, date of birth, sex, race, department of corrections identification number, State identification number, FBI identification number, what offense he/she was in prison for, how long the sentence was, the date the prisoner entered the prison, the month and day the prisoner was released in 1994, and so forth. Using the 302,309 records, BJS drew a sample for each State (appendix table 1). The sample totaled 38,624 out of the 302,309 released prisoners.

For drawing the sample, each of the 302,309 was placed into 1 of 13 offense categories corresponding to the conviction offense that brought the prison term. (For those with multiple conviction offenses, the offense with the longest prison sentence was designated as the conviction offense.) For example, each of the 5,386 whose conviction offense was homicide went into the "homicide" category. Each of the 10,510 convicted violent sex offenders was placed in the "rape/sexual assault" category.

Each of the 13 categories was sampled within each State. A target set for each category determined the size of the sample (appendix table 2). For the homicide category, the target in each State was a sample of 80 released homicide offenders. For rape/sexual assault, the target was all the violent sex offenders. For robbery, the target for each State was a sample of 180 released robbers.

A major deviation from the targeted sample sizes occurred for California; it was necessary to double sample sizes to improve the precision of estimates. In other major deviations, all the released prisoners, not a sample of them, in Delaware and Minnesota were selected to be in the database.

To extrapolate from the sample to the universe from which the sample was drawn, each case was assigned a weight corresponding to the inverse of the probability of selection. For example, the 80 sampled Florida homicide offenders were 80 out of 362 homicide offenders released in Florida in 1994. The inverse of their probability of selection was 362/80, or 4.525. Each sampled homicide offender in Florida therefore represented 4.525 released Florida homicide offenders.

*Step 2: Obtain criminal history records from States that released prisoners*

BJS contacted the State agency that held criminal history files and asked for the computerized "RAP" sheet (Record of Arrest and Prosecution) on each prisoner sampled from the State. Using individual identifiers (not including fingerprints) supplied by BJS to match released prisoners to criminal history files, these agencies provided BJS with computerized RAP sheets on 37,647 (97%) of the 38,624 released prisoners. Among other things, these RAP sheets typically contained the person's name, date of birth, gender, race, date of each arrest in the State, each arrest charge (designated by the penal code and/or a literal version of the penal code) and level (felony or misdemeanor), date of each court adjudication, each adjudicated offense and level, each court outcome (guilty or not guilty), and sentence (prison, jail, probation, sentence length).

RAP sheets do not provide a complete record of every instance where a person was arrested or prosecuted in the State. Arrests and prosecutions of juveniles are generally not included. Arrests and prosecutions are routinely included for felonies or serious misdemeanors but not for petty offenses (such as minor traffic violations, drunkenness, and vagrancy). The latest year covered in the RAP sheets varied by State, depending on when the sheets were sent to BJS. All RAP sheets covered all of 1997. Many went beyond 1997.

*Step 3: Obtain criminal history records from FBI*

After receiving a State's RAP sheets, BJS asked the FBI for the computerized RAP sheets it had on the sampled prisoner. The FBI identification numbers from the department of corrections (on 29,053 releases) or from criminal history repositories (on an additional 2,695 releases) helped the FBI to match sampled prisoners to criminal history records in the FBI database called "Triple I," or "III". Without the number, the FBI performed matches using other identifiers. BJS supplied the FBI with the FBI identification number, name, date of birth, and

**Appendix table 1. Population, sample, and analysis subset, by State**

| | Prisoners released in 1994 | | |
|---|---|---|---|
| | Total number | Selected from total to be in the sample | Selected from sample to be in this report |
| Total | 302,309 | 38,624 | 33,796 |
| Arizona | 7,418 | 2,000 | 1,433 |
| California | 105,527 | 7,183 | 7,048 |
| Delaware | 721 | 721 | 659 |
| Florida | 24,751 | 2,893 | 2,564 |
| Illinois | 18,606 | 2,615 | 2,317 |
| Maryland | 11,639 | 2,117 | 1,599 |
| Michigan | 8,049 | 2,315 | 1,965 |
| Minnesota | 1,929 | 1,929 | 1,730 |
| New Jersey | 13,567 | 2,289 | 2,130 |
| New York | 31,406 | 2,639 | 2,466 |
| N. Carolina | 25,797 | 2,314 | 2,047 |
| Ohio | 19,313 | 2,664 | 1,822 |
| Oregon | 5,009 | 2,292 | 1,560 |
| Texas | 22,852 | 2,550 | 2,430 |
| Virginia | 5,725 | 2,103 | 2,026 |

**Appendix table 2. Targeted sample sizes by offense type**

| Most serious release offense | Targeted sample size in each State |
|---|---|
| Homicide | 80 |
| Rape/Sexual assault | All |
| Robbery | 180 |
| Aggravated assault | 180 |
| Burglary | 220 |
| Larceny/motor vehicle theft | 220 |
| Fraud | 60 |
| Drug trafficking | 380 |
| Drug possession | 120 |
| Weapons offense | 40 |
| Driving under the influence | 120 |
| Other public order | 120 |
| Other | 120 |

Note: For one State (California), targeted sample sizes are 2 times those shown.

other identifiers on 35,985 of the 38,624 prisoners. (The 35,985 did not include New York's 2,639 prisoners because New York law prevented BJS from supplying the FBI with identifiers.) The FBI supplied BJS with RAP sheets on 34,439 (96% of the 35,985 released prisoners).

Although the 34,439 computerized RAP sheets contained records of all arrests and prosecutions, the BJS study used only the out-of-State records of arrests and prosecutions that took place outside the State that released the prisoner. The in-State records in the FBI RAP sheets were not used because in-State records were already available in the RAP sheets supplied by the State that released the prisoner. The unique value of the FBI RAP sheets was the *out-of-State* records (both prior to and following release) they contained on arrests and prosecutions.

A least one RAP sheet was found on 38,049 (nearly 99%) of the 38,624 prisoners. For 34,037 (88%), a RAP sheet was found in both repositories (the percentage would have been greater than 88% had New York's released prisoners been included).

*Step 4:  Create the study database*

The information obtained from the 3 sources — the 15 departments of corrections, the 15 criminal history repositories, and the FBI — was combined into a single database.  The database is a rectangular file with 6,520 variables on 38,624 released prisoners. Of the 6,520 variables, 6,435 document a prisoner's entire adult criminal history record: each arrest date and any court records of conviction or nonconviction arising from the arrest that day. Arrests are arranged from the earliest arrest date to the latest. The database documents a maximum of 99 separate arrest dates. (For the 10 prisoners out of the 38,624 who were arrested on more than 99 separate dates — the maximum was 175 for one person — the database documents their 99 latest.)

The database identifies the total number of offenses the person was charged with on each day of arrest, what each offense was, the level of each offense (felony versus misdemeanor), and other characteristics of each offense. If the person was arrested for more than three offenses that day, only the three most serious — as determined by a hierarchy of seriousness —  are separately identified.

The hierarchy defines felonies as more serious than misdemeanors. Within these levels, for arrests and prosecutorial charges, the hierarchy from most to least serious is as follows:  homicide, rape/other sexual assault, robbery, aggravated assault, burglary, larceny/motor vehicle theft, fraud, drug trafficking, drug possession, weapons offense, driving under the influence, other public-order, and other.

For each arrest date, the database also documents any court adjudications that resulted from the arrest that day. The date of the adjudication is recorded, along with the number of adjudicated charges, what the separate adjudicated offenses were, the level of each offense, how each charge was disposed of (convicted, not convicted), how each offense was sentenced (prison, jail, probation, sentence length), and other details about each offense. If the person was charged in court with more than three offenses on the adjudication date, only the three most serious — as determined by a hierarchy of seriousness — are separately identified. The hierarchy defines charges resulting in conviction as more serious than charges resulting in non-conviction. For each of those categories, felony charges are defined as more serious than misdemeanor charges, within the levels of the previously described hierarchy of offense seriousness.

*Adding North Carolina arrests to the database*

Sometimes in RAP sheets for North Carolina prisoners, the date of arrest in a custody record submitted by correctional authorities did not match a date on any arrest record for that person. In such cases, BJS created an arrest record using the arrest date from the custody record. This was the only instance in which an imputed value appeared in the database.

*Adding information to the database to identify technical violators*

Court records in State and FBI RAP sheets indicated that 25.4% of released prisoners were back in prison with a new prison sentence (table 8). To document how many were back for any reason (either a new sentence or a parole violation), data were obtained from the National Corrections Reporting Program (NCRP) that identifies all persons entering prison in a year. Individual identifiers (for example, Department of Corrections identification number, date of birth, sex, race) were used to match sampled prisoners to persons entering prison according to NCRP data.

Because of incomplete NCRP data in New York, additional information on prison returns was obtained from custody records in New York State RAP sheets.  Based on three sources —
1. courts records in State and FBI RAP sheets for nine States,
2. NCRP records for nine States, and
3. custody records in New York State RAP sheets — 51.8% of released prisoners in the nine States were back in prison for either a new prison sentence or a technical violation (table 8).  The percentage returned to prison solely for a technical violation (26.4%) is approximated by taking the difference between the 51.8% and the 25.4%.

New York State custody records did not always distinguish prison returns from jail returns.  Consequently, some persons received in New York jails were probably mistakenly classified as prison returns. Also,  the 51.8% return-to-prison rate is heavily affected by the inclusion of one large State, California, with a relatively high rate. When California is excluded, the return-to-prison rate falls to 40.1%.

*Step 5: Data analysis*

This report is based on 33,796 of the 38,624 sampled prisoners released in 1994. Persons selected for inclusion had to meet all four of these criteria:

1. A RAP sheet on the prisoner was found in the State criminal history repository.

2. The released prisoner was alive through the 3-year follow-up period. As a result of this requirement, 133 prisoners were excluded.

3. The prisoner's sentence (or, as it is called in the database, the "total maximum sentence length") was greater than 1 year (missing sentences were treated as greater than 1 year).

4. The prisoner's 1994 release was not recorded by the State department of corrections as any of these: release to custody/detainer/warrant, absent without leave, escape, transfer, administrative release, or release on appeal.

Weighted, the 33,796 prisoners meeting the 4 selection criteria represent 272,111 prisoners released in the study's 15 States in 1994. Correctional practitioners might refer to the sampled prisoners with the shorthand term "releases with sentences greater than a year." The 272,111 are an estimated two-thirds of all the Nation's "releases with sentences greater than a year" in 1994.

*Note on missing court dates in FBI RAP sheets*

FBI RAP sheets often failed to contain the date of adjudication. When the data was not reported, for analysis purposes only, BJS temporarily assigned a court date based on the arrest date in the arrest record. National statistics indicate that there are 173 days on average from arrest to adjudication. Therefore, during analysis, court records without a court date were temporarily assigned a date 173 days past the date of arrest.

**Appendix table 3. Estimates of 1 standard error for table 8**

| Prisoner characteristic | Percent of all released prisoners | Percent of released prisoners who, within 3 years, were — | | | |
|---|---|---|---|---|---|
| | | Re-arrested | Recon-victed | Returned to prison with a new prison sentence | Returned to prison with or without a new prison sentence |
| All released prisoners | 0% | 0.4% | 0.5% | 0.4% | 0.5% |
| **Gender** | | | | | |
| Male | 0.3% | 0.4% | 0.5% | 0.4% | 0.5% |
| Female | 0.3 | 1.6 | 1.6 | 1.3 | 1.8 |
| **Race** | | | | | |
| White | 0.4% | 0.6% | 0.7% | 0.6% | 0.7% |
| Black | 0.4 | 0.5 | 0.6 | 0.6 | 0.7 |
| Other | 0.1 | 4.1 | 4.0 | 2.5 | 4.7 |
| **Ethnicity** | | | | | |
| Hispanic | 0.4% | 1.0% | 1.1% | 1.0% | 1.2% |
| Non-Hispanic | 0.4 | 0.5 | 0.6 | 0.6 | 0.6 |
| **Age at release** | | | | | |
| 14-17 | 0.1% | 4.9% | 6.3% | 6.6% | 6.7% |
| 18-24 | 0.3 | 0.8 | 1.0 | 0.9 | 1.1 |
| 25-29 | 0.4 | 0.8 | 1.0 | 0.9 | 1.1 |
| 30-34 | 0.4 | 0.8 | 1.0 | 0.9 | 1.1 |
| 35-39 | 0.3 | 1.0 | 1.2 | 1.0 | 1.3 |
| 40-44 | 0.3 | 1.4 | 1.5 | 1.2 | 1.7 |
| 45 or older | 0.2 | 1.5 | 1.5 | 1.4 | 1.8 |

**Appendix table 4. Estimate of 1 standard error for table 9**

| Most serious offense for which released | Percent of all released prisoners | Percent of released prisoners who, within 3 years, were — | | | |
|---|---|---|---|---|---|
| | | Re-arrested | Recon-victed | Returned to prison with a new prison sentence | Returned to prison with or without a new prison sentence |
| All released prisoners | 0% | 0.4% | 0.5% | 0.4% | 0.5% |
| **Violent offenses** | 0.1% | 0.7% | 0.8% | 0.7% | 0.8% |
| Homicide | 0 | 1.7 | 1.4 | 1.1 | 1.9 |
| Kidnaping | 0.1 | 9.2 | 9.2 | 9.5 | 10.3 |
| Rape | 0 | 0 | 0 | 0 | 0 |
| Other sexual assault | 0.0 | 0.1 | 0.1 | 0 | 0.1 |
| Robbery | 0 | 1.2 | 1.4 | 1.2 | 1.5 |
| Assault | 0 | 1.2 | 1.3 | 1.1 | 1.4 |
| Other violent | 0.1 | 7.5 | 7.1 | 5.6 | 9.3 |
| **Property offenses** | 0.1% | 0.7% | 0.8% | 0.8% | 0.8% |
| Burglary | 0 | 1.0 | 1.2 | 1.1 | 1.2 |
| Larceny/theft | 0.2 | 1.2 | 1.5 | 1.5 | 1.6 |
| Motor vehicle theft | 0.2 | 2.2 | 2.7 | 2.5 | 2.5 |
| Arson | 0.1 | 6.5 | 6.2 | 5.8 | 7.3 |
| Fraud | 0 | 2.1 | 2.2 | 2.0 | 2.3 |
| Stolen property | 0.1 | 3.2 | 4.1 | 4.2 | 4.3 |
| Other property | 0 | 3.8 | 4.3 | 4.5 | 5.0 |
| **Drug offenses** | 0.2% | 0.8% | 0.8% | 0.8% | 0.9% |
| Possession | 0.1 | 1.6 | 1.6 | 1.4 | 1.7 |
| Trafficking | 0.1 | 0.8 | 0.9 | 0.8 | 1.0 |
| Other/unspecified | 0.2 | 2.7 | 3.4 | 3.2 | 3.3 |
| **Public-order offenses** | 0% | 1.3% | 1.4% | 1.2% | 1.5% |
| Weapons | 0 | 2.8 | 3.2 | 2.8 | 3.3 |
| Driving under the influence | 0 | 2.1 | 1.9 | 1.6 | 2.2 |
| Other public-order | 0 | 1.6 | 1.7 | 1.6 | 1.7 |
| **Other offenses** | 0.2% | 5.3% | 5.8% | 4.8% | 5.7% |

Note: Values of 0 generally mean less than .05%.

*Definition of 3-year follow-up period*

For analytic purposes, "3 years" was defined as 1,096 days from the day of release from prison. Any rearrest, reconviction, or re-imprisonment occurring after 1,096 days from the 1994 release was not included. A conviction after 1,096 days was not counted even if it resulted from an arrest within the period.

*Comparing recidivism rates*

For virtually every number in the report there is a margin of error arising from the fact that the number is based on a sample rather than a complete enumeration. For example, the estimate that 67.5% of all released prisoners were rearrested within 3 years has a margin of error (or 95%-confidence interval) of approximately plus or minus 1 percentage point. In this report where the text states or implies that one recidivism rate is higher or lower than another, the difference had been tested and found to be "statistically significant," meaning it was an unlikely result of sampling. The 95%-confidence intervals used to test differences between recidivism rates were obtained from statistical software (called "SUDAAN") designed for estimating sampling error from complex sample surveys. Standard errors used to construct 95%-confidence intervals are shown in appendix tables 3 and 4.

Where this report compares these recidivism rates to those for prisoners released in 1983, the 95%-confidence intervals for 1994 recidivism rates were used as the 95%-confidence intervals for 1983 rates which were no longer available.

**Offense definitions**

All offense categories except homicide include attempts.

Violent offenses: homicide, kidnaping, rape, other sexual assault, robbery, assault and other violent.

Homicide: Murder is (1) intentionally causing the death of another person without extreme provocation or legal justification or (2) causing the death of another while committing or attempting to commit another crime.

Nonnegligent (or voluntary) manslaughter is intentionally and without legal justification causing the death of another when acting under extreme provocation. The combined category of murder and nonnegligent manslaughter.

Negligent (or involuntary) manslaughter is causing the death of another person through recklessness or gross negligence, without intending to cause death. Includes vehicular manslaughter, but excludes vehicular murder (intentionally killing someone with a motor vehicle), which should be classified as murder).

Kidnaping: the unlawful seizure, transportation, or detention of a person against his or her will, or of a minor without the consent of his or her guardian. Includes forcible detainment, false imprisonment, abduction, or unlawful restraint. Does not require that ransom or extortion be the purpose of the act.

Rape: includes forcible intercourse (vaginal, anal, or oral) with a female or male. Includes forcible sodomy or penetration with a foreign object (sometimes called "deviate sexual assault"); excludes statutory rape or any other nonforcible sexual acts with a minor or with someone unable to give legal or factual consent.

Other sexual assault: (1) forcible or violent sexual acts not involving intercourse with an adult or minor, (2) nonforcible sexual acts with a minor (such as statutory rape or incest with a minor), and (3) nonforcible sexual acts with someone unable to give legal or factual consent because of mental or physical defect or intoxication.

Robbery: the unlawful taking of property that is in the immediate possession of another, by force or the threat of force. Includes forcible purse snatching, but excludes nonforcible purse snatching.

Assault: Aggravated assault includes (1) intentionally and without legal justification causing serious bodily injury, with or without a deadly weapon or (2) using a deadly or dangerous weapon to threaten, attempt, or cause bodily injury, regardless of the degree of injury, if any. Includes attempted murder, aggravated battery, felonious assault, and assault with a deadly weapon.

Simple assault: intentionally and without legal justification causing less than serious bodily injury without a deadly or dangerous weapon, or attempting or threatening bodily injury without a dangerous or deadly weapon.

Other violent: includes offenses such as intimidation, illegal abortion, extortion, cruelty towards a child or wife, hit-and-run driving with bodily injury, and miscellaneous crimes against the person.

Property offenses: burglary, larceny, motor vehicle theft, arson, fraud/ forgery/embezzlement, stolen property, and other property.

Burglary: the unlawful entry of a fixed structure used for regular residence, industry, or business, with or without the use of force, to commit a felony or theft.

Larceny: the unlawful taking of property other than a motor vehicle from the possession of another, by stealth, without force or deceit. Includes pocket picking, nonforcible purse snatching, shoplifting, and thefts from motor vehicles. Excludes receiving and/or reselling stolen property, and thefts through fraud or deceit.

Motor vehicle theft: the unlawful taking of a self-propelled road vehicle owned by another. Includes the theft of automobiles, trucks, and motorcycles, but not the theft of boats, aircraft, or farm equipment (classified as larceny/theft). Also includes receiving, possessing, stripping, transporting, and reselling stolen vehicles, and unauthorized use of a vehicle (joyriding).

Arson: intentionally damaging or destroying property by fire or explosion.

Fraud, forgery, and embezzlement: using deceit or intentional misrepresentation to unlawfully deprive a persons of his or her property or legal rights. Includes offenses such as check fraud, confidence game, counterfeiting, and credit card fraud.

Stolen property: all types of knowingly dealing in stolen property, such as receiving, transporting, possessing, concealing, and selling, excluding motor vehicle theft) and illegal drugs.

Other property: includes possession of burglary tools, damage to property, smuggling, and miscellaneous property crime.

Drug offenses: drug trafficking, drug possession, and other drug offenses.

Drug trafficking: includes manufacturing, distributing, selling, smuggling, and possession with intent to sell.

Drug possession: includes possession of an illegal drug, but excludes possession with intent to sell.

Other drug offenses: includes offenses involving drug paraphernalia and forged or unauthorized prescriptions.

Public-order offenses: are those that violate the peace or order of the community or threaten the public health or safety through unacceptable conduct, interference with governmental authority, or the violation of civil rights or liberties. In this study, persons in prison in 1994 for "public-order" offenses were roughly 33% driving while intoxicated/driving under the influence, 33% weapons offense, 8% traffic offense, and 9% probation violation.

Weapons offenses: unlawful sale, distribution, manufacture, alteration, transportation, possession, or use of a deadly or dangerous weapon or accessory.

Traffic offenses: illegal driving behaviors that do not include vehicular manslaughter or DUI/DWI.

DUI/DWI: driving under the influence and driving while intoxicated.

Other public-order offenses: includes probation or parole violation, traffic offenses (not including DWI or DUI), escape, obstruction of justice, court offenses, nonviolent sex offenses, commercialized vice, family offenses, liquor law violations, bribery, invasion of privacy, disorderly conduct, contributing to the delinquency of a minor and miscellaneous public-order offenses. In this study, persons in prison in 1994 for "other public-order" offenses were roughly 25% probation violation, 24% traffic offense (not including DWI or DUI), 12% escape (including flight to avoid prosecution), 9% obstruction of justice, and 6% court offenses.

Other offenses: all offenses unlisted above.

This report in portable document format and in ASCII, its tables, and related statistical data are available at the BJS World Wide Web Internet site: <http://www.ojp.usdoj.gov/bjs/>

To keep current on criminal justice statistics at no cost, subscribe to e-mail notification of the latest statistical releases from BJS, the FBI, and the Office of Juvenile Justice and Delinquency Prevention. To learn how to subscribe to JUSTSTATS, see <http://www.ojp.usdoj.gov/bjs/juststats.htm>

The Bureau of Justice Statistics is the statistical agency of the U.S. Department of Justice. Lawrence A. Greenfeld is acting director.

Patrick A. Langan, Senior Statistician, and David J. Levin, Statistician, both of BJS, analyzed the data and wrote and verified this report. Jodi M. Brown, a former BJS statistician, assisted in data processing. Data and assistance interpreting criminal histories were contributed by the Information Technology Management Section of the FBI's Criminal Justice Information Services Division and officials of criminal history repositories and departments of corrections in the 15 States that participated in the study. The Regional Justice Information Service assisted in data collection and processing. The FBI and the Corrections Program Office of the Office of Justice Programs contributed funding for the study.

June 2002, NCJ 193427

**U.S. Department of Justice**
Office of Justice Programs
Bureau of Justice Statistics

*Washington, DC  20531*

Official Business
Penalty for Private Use $300

PRESORTED STANDARD
POSTAGE & FEES PAID
DOJ/BJS
Permit No. G-91