**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEFFERSON WAYNE SCHRADER, et al.,    )
    )  Case No. 10-CV-1736-RMC
       Plaintiffs,    )
    )
       v.    )
    )
ERIC HOLDER, et al.,    )
    )
       Defendants.    )
_____)

**REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**COME NOW** the Plaintiffs, Jefferson Schrader and the Second Amendment Foundation,

Inc., by and through undersigned counsel, and submit their Reply Brief in Support of Plaintiffs'

Cross-Motion for Summary Judgment.

Dated: April 21, 2011           Respectfully submitted,

                                   Alan Gura (D.C. Bar No. 453449)
                                   Thomas M. Huff (D.C. Bar No. 978294)
                                   Gura & Possessky, PLLC
                                   101 N. Columbus Street, Suite 405
                                   Alexandria, VA 22314
                                   703.835.9085/Fax 703.997.7665

                     By:  /s/ Alan Gura_____
                            Alan Gura

                            Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     SCHRADER IS ENTITLED TO THE REMOVAL OF HIS FIREARMS
       DISQUALIFICATION BECAUSE 18 U.S.C. § 921(g)(1) DOES NOT
       PROHIBIT ORDINARY COMMON LAW MISDEMEANANTS FROM
       PURCHASING OR POSSESSING FIREARMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.     The Government's Motion To Dismiss Plaintiffs' First Claim For Relief Is
              Not "Unopposed"; Plaintiffs Have Stated Their Claim And Are Entitled To
              Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       B.     The Government's Arguments Concerning The Fourth Circuit's
              Holding In *Coleman* Are Anticipated And Rebutted By Plaintiffs'
              Opening Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    THE GOVERNMENT'S IMPOSITION OF A FIREARMS BAN ON
       ORDINARY COMMON LAW MISDEMEANANTS VIOLATES THE
       SECOND AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.     The Government's Characterization of *Heller*'s Holding As Limited To
              Persons Who Have Been "Law-Abiding [] At All Times" Is Incorrect. . . . . . . . . 5

       B.     The Government's Attempt To Classify Schrader As A "Convicted Felon"
              Fails. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              1.     Schrader's 1968 conviction for common law misdemeanor assault
                     and battery in Maryland was also a misdemeanor at common law at
                     the time of the Second Amendment's framing. . . . . . . . . . . . . . . . . . . . 8

              2.     While certain heightened or aggravated misdemeanor offenses might
                     be analogized to felony-level crimes, Schrader's conviction for
                     simple common law misdemeanor assault and battery raises no such
                     issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       C.     The Government's Attempt To Distinguish The Supreme Court's Strict
              Scrutiny Framework Fails. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

D.      The Government's Attempt To Justify Its Application Of A Gun Ban
        Against Schrader Under Intermediate Scrutiny Fails. . . . . . . . . . . . . . . . . . . . . . . 12

III.    THE GOVERNMENT'S OPPOSITION BRIEF RAISES NO GENUINE
        DISPUTE OF MATERIAL FACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.     PLAINTIFFS RESPECTFULLY WITHDRAW THEIR ALTERNATIVE
        CIVIL RIGHTS RESTORATION ARGUMENT UNDER 18 U.S.C. § 921(a)(20). . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Trs.* v. *Fox,*
    492 U.S. 469 (1989)................................................... 12

*Caron* v. *United States,*
    524 U.S. 308 (1998)................................................... 19

*Clark* v. *Jeter,*
    486 U.S. 456 (1988)................................................... 12

*District of Columbia* v. *Heller,*
    554 U.S. 570 (2008)........................................... 4-6, 12, 13

*Harris* v. *United States,*
    536 U.S. 545 (2002).................................................... 4

*Heller* v. *District of Columbia,*
    698 F. Supp. 2d 179 (D.D.C. 2010) ("Heller II"). .............................. 12

*Hill* v. *Norfolk & Western Ry. Co.,*
    814 F.2d 1192 (7th Cir. 1987)............................................. 1

*Johnson* v. *United States,*
    130 S. Ct. 1265 (2010).................................................. 8

*Kyllo* v. *United States,*
    533 U.S. 27 (2001).................................................... 9

*Logan* v. *United States,*
    552 U.S. 23 (2007)................................................... 20

*McDonald* v. *City of Chicago,*
    130 S. Ct. 3020 (2010).............................................. 4, 10

*New York* v. *Ferber,*
    458 U.S. 747 (1982).................................................. 12

*Ord* v. *District of Columbia,*
    587 F.3d 1136 (D.C. Cir. 2009).......................................... 16

*Reno* v. *Flores*,
 507 U.S. 292 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Seegars* v. *Ashcroft*,
 396 F.3d 1248 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States* v. *Bost*,
 87 F.3d 1333 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States* v. *Chester*,
 628 F.3d 673 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Coleman*,
 158 F.3d 199 (4th Cir. 1998) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

*United States* v. *Marzzarella*,
 614 F.3d 85 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *Schultheis*,
 486 F.2d 1331 (4th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States* v. *Virginia*,
 518 U.S. 515 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *White*,
 593 F.3d 1199 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States* v. *White*,
 593 F.3d 1199 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Washington* v. *Glucksberg*,
 521 U.S. 702 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## Statutes and Rules

18 U.S.C. § 921(a)(20). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 13

18 U.S.C. § 925A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

Md. CJ Code Ann. § 8-103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Md. CJ Code Ann. § 8-207 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Md. Criminal Procedure Code Ann. § 10-105. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other Authorities**

ALI, Model Penal Code (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

W. Blackstone, Commentaries on the Laws of England (1769). . . . . . . . . . . . . . . . . . . 8

W. LaFave & A. Scott, Substantive Criminal Law (1986 and Supp. 2003). . . . . . . . . . . . . 8

INTRODUCTION

In 1968, Jefferson Schrader was convicted of a simple, non-aggravated form of misdemeanor common law assault and battery for his role in a fist fight while a 20-year-old Navy serviceman. He was not sentenced to any jail time, he went on to serve a tour in Vietnam, and has had no further encounters with law enforcement save for a minor traffic infraction. This case raises the question of whether the federal government may invoke that 43-year-old common law misdemeanor conviction as a basis for depriving Schrader of his fundamental right to keep and bear arms, for life. The parties' disagreement implicates two questions: first, whether the federal firearms dispossession statute applies to Schrader's case at all, and if so, whether the government can justify such application under the Second Amendment. The answer to both questions is no.

ARGUMENT

I.    SCHRADER IS ENTITLED TO THE REMOVAL OF HIS FIREARMS DISQUALIFICATION BECAUSE 18 U.S.C. § 921(g)(1) DOES NOT PROHIBIT ORDINARY COMMON LAW MISDEMEANANTS FROM PURCHASING OR POSSESSING FIREARMS

   A.    The Government's Motion To Dismiss Plaintiffs' First Claim For Relief Is Not "Unopposed"; Plaintiffs Have Stated Their Claim And Are Entitled To Summary Judgment

The government begins its brief with the odd contention that its Motion to Dismiss the First Claim for Relief under Fed. R. Civ. P. 12(b)(6) is "unopposed" by Plaintiffs, *see* Def. Reply at 3, and goes so far as to quote *Hill* v. *Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987) for the proposition that the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." The government's characterization is demonstrably incorrect: Plaintiffs devoted an entire ten-page section of their opening brief to this very issue. *See* Pl. Br. [Dkt. #8] at 16-26.

1

Plaintiffs' First Claim seeks the "removal of [Schrader's] firearms disability" from the government's NICS database pursuant to 18 U.S.C. § 925A on the grounds that "his 1968 Maryland common law misdemeanor assault conviction is not a disabling offense for purposes of 18 U.S.C. § 922(g)(1)." Am. Comp. [Dkt. # 6] at ¶ 20. That law—colloquially known as the "felon-in-possession" statute—prohibits firearm possession by any person convicted of a "crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), with an exception for "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20). The issue is whether Schrader's 1968 misdemeanor conviction for misdemeanor common law assault and battery triggers the statute.

The government rests its motion to dismiss on the theory that this felon-in-possession scheme should be construed to cover *all common law misdemeanors*: uncodified offenses that simply have no statutory punishment criteria at all. Under the government's view, all such offenses are *per se* classifiable as disqualifying offenses; their absence of any legislative judgment concerning their punishment is immaterial. *See* Def. Br. at 9-12. Plaintiffs disagree, and argue that Congress chose the word "punishable"—a term that necessarily refers to *specified* punishments—to describe predicate offenses that a convicting jurisdiction's legislature has affirmatively deemed serious enough to warrant a prison sentence exceeding one year. *See* Pl. Br. [Dkt. #8] at 16-26.

The government is certainly entitled to advance its statutory arguments before this court, but has no grounds for accusing Plaintiffs of ostriching. Plaintiffs' brief squarely confronts the government's legal theory with a ten-page analysis that applies standard principles of statutory

2

construction to the Act's text, structure, and recorded legislative history.[1] *See* Pl. Br. [Dkt. #8] at 16-26. The government's claim that its Motion to Dismiss is "unopposed" is simply incorrect.

B.    The Government's Arguments Concerning The Fourth Circuit's Holding In *Coleman* Are Anticipated And Rebutted By Plaintiffs' Opening Brief

The government's brief scarcely acknowledges Plaintiffs' lengthy statutory analysis, but focuses instead on the Fourth Circuit's opinion in *United States* v. *Coleman*, 158 F.3d 199 (4th Cir. 1998) (en banc), which found common law assault to be a disqualifying offense under § 922(g)(1). *See* Def. Reply at 4-5, 35. Although *Coleman* is not controlling in this jurisdiction, Plaintiffs' opening brief devotes an entire section to why it should not carry persuasive merit either. *See* Pl. Br. at 23-25. Plaintiffs rest primarily on those arguments and reply only briefly here, as there is no point in re-briefing the issue in full.

Plaintiffs pointed out in their opening brief that the *Coleman* court offered little textual analysis of § 922(g)(1), dedicating just three sentences to the issue. Pl. Br. at 24; *see also Coleman*, 158 F.3d at 203-04. The government replies that "that analysis is sufficient, and perhaps its brevity signals the clarity of the matter." Def. Reply at 35. But the full history of the Fourth Circuit's approach demonstrates that the matter is far from clear.

Indeed, for the quarter-century prior to *Coleman*, the Fourth Circuit's jurisprudence on the matter was controlled by *United States* v. *Schultheis*, 486 F.2d 1331, 1334-35 & n.2 (4th Cir. 1973), which had held that a Maryland conviction for common law misdemeanor assault and battery was *not* "properly classified as a 'felony' within the meaning of the federal statute." The

---

[1] The government's brief does briefly acknowledge this analysis, but appears to characterize it as part of Plaintiffs' Second Amendment claim. *See* Def. Reply at 4. This characterization is incorrect.

*Schultheis* court took note of the statute's "silen[ce] regarding its application to common law convictions" and concluded that it would look to the actual sentence imposed to appraise the seriousness of the conviction in such cases. *Id*. While *Coleman* would eventually reverse *Schultheis*, it did so only over a dissent that criticized the majority for "blindly lump[ing] into the same category the most trivial and the most heinous assaults, thereby defeating the clear Congressional desire to exclude minor transgressions of the law from the sweep of" the federal felon-in-possession statute. *Id*. at 205 (WIDENER, J., dissenting) (citing *Schultheis*, 486 F.2d at 1333). Plainly, the issue is not as simple as the government suggests.

Of course, the government correctly notes that Plaintiff's construction "is not how any court—save one that reversed itself *en banc*—has interpreted the relevant statutory provisions." Def. Reply at 4. But the government neglects to point out that the Fourth Circuit appears to be the *only* jurisdiction to have taken up the issue as it applies to common law misdemeanants, and has done so only after significant internal struggle. It would be equally true, and no more useful, to note that only one court has ever agreed with the government's view.

Of greater relevance is the Supreme Court's repeated instruction under the avoidance canon that "when a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Harris* v. *United States*, 536 U.S. 545, 555 (2002) (citation and quotation omitted). *Coleman* predated the Supreme Court's decisions in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) and *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010), which confirmed that the Second Amendment protects an individual, fundamental right to keep and

4

bear arms.[2] As demonstrated in Section II below, *Coleman*'s broad interpretation of the federal

felon-in-possession would violate the Second Amendment. This further counsels against

adoption of the Fourth Circuit's *Coleman* rule.

II.     THE GOVERNMENT'S IMPOSITION OF A FIREARMS BAN ON
        ORDINARY COMMON LAW MISDEMEANANTS VIOLATES THE
        SECOND AMENDMENT

        A.      The Government's Characterization of *Heller*'s Holding As Limited To Persons
                Who Have Been "Law-Abiding []  At All Times" Is Incorrect

        The government seeks to read into *Heller* certain very broad limitations on the Second

Amendment's scope—limitations that are impossible to reconcile with the entirety of the

opinion. In particular, the government opens with the claim that

>  . . . the historical understanding of the scope of the Second Amendment extends only to
> "law-abiding citizens," and [Schrader] admits that he has not been one at all times. *Heller*
> v. *District of Columbia* (sic), 554 U.S. 570, 625 (2008).

Def. Reply at 2. This reading of *Heller* is highly untenable.

        *Heller*'s conclusion that the Second Amendment protects an individual right to keep and

bear arms was based on an exhaustive analysis of its historical scope. *See* Pl. Br. at 29-30. As the

Court explained, the Second Amendment codifies a *pre-existing* right to keep and bear

arms—one that must be defined in light of its historical background. *Heller*, 554 U.S. at 592. As

a pre-existing right, it was subject to certain pre-existing historical limitations on its scope. *See*

*Id*. at 626. For example, the Court disclaimed that nothing in its opinion "should be taken to cast

---

[2] The government oddly cites *Coleman* for the proposition that "[b]ecause Plaintiff
Schrader's admitted crime was subject to a term of imprisonment exceeding one year, which
qualifies it as a felony under the definition in federal law, he should be considered to be a
convicted felon for purposes of his Second Amendment challenge." Def. Reply at 15 (citing
*Coleman*, 158 F.3d at 203-04). *Coleman* in fact says nothing about the Second Amendment at all.

doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. 626-27. The Court described these prohibitions as "presumptively lawful," though also explained that it was not providing an exhaustive list. *Id*. at 627, n.26.

The government's reading of *Heller* would make surplusage of this entire discussion. If a person must be "law-abiding [] at all times" to qualify for protection under the Second Amendment, Def. Reply at 2, there would be no reason for the Court to mention the presumed constitutionality of felon-dispossession laws.  This proposed reading of *Heller* also lacks any definable limiting principle, and would disqualify *all* misdemeanants from the protections of the Second Amendment. *See* Def. Reply at 32 ("Misdemeanants, like convicted felons, pose an unacceptable risk of firearm misuse" and Congress may "properly prohibit[] firearm possession by misdemeanants today.") Taken to its logical conclusion, it would apparently exclude even persons convicted of minor traffic infractions.

Regardless, there is simply no historical basis for this proposed construction. The government submits no framing era support for the proposition that common-law misdemeanants were disarmed.

B.      The Government's Attempt To Classify Schrader As A "Convicted Felon" Fails

Alternatively, the government invokes perfectly circular logic to characterize Schrader as a felon, claiming that "[b]ecause Plaintiff Schrader's admitted crime was subject to a term of imprisonment exceeding one year, which qualifies it as a felony under the definition in federal law, he should be considered to be a convicted felon for purposes of his Second Amendment

6

challenge." Def. Br. at 25. Thus, the government appears to take the position that the term "felon," as used in *Heller*, does not mean "felon" in either the historical or literal sense (it is undisputed that Schrader's conviction was a misdemeanor under Maryland law), but rather however the federal government chooses to define it. It further offers the proposition that "just because misdemeanants and felons historically lost different types of rights upon conviction does not prevent Congress from properly prohibiting firearm possession by misdemeanants today." Def. Reply at 32.

In other words, the government can deprive anyone of a constitutional right by application of a label. If "felons" have no rights, and anyone is a "felon" if Congress says so, a prohibition leveled against any category of people—parking meter violators, the left-handed, etc.—can be bootstrapped into constitutionality. This would be a particularly unsatisfying method for defining the scope of a fundamental constitutional right.[3] But more importantly, it is simply irreconcilable with the *Heller* opinion itself, which focuses on the *historical* scope and definition of the right to keep and bear arms, as well as its historic limitations. *See* Pl. Br. at 29-30. Thus, the relevant inquiry should instead focus on whether the conviction at issue was one that would be historically classified as a felony at the time of the Second Amendment's common law origins, or perhaps alternatively, could be properly analogized as such. And as explained below, the answer to both inquiries in this case is no.

---

[3] And regardless, Section 922(g)(1) does not use the term "felony" at all, and is only described as the "felon-in-possession" statute by courts and commentators in the colloquial sense. *See* Pl. Br. at 5, n.2; see also Def. Br. at 3, n.1. It does not purport to be a formal classification tool for distinguishing between felonies and misdemeanors.

1.      Schrader's 1968 conviction for common law misdemeanor assault and battery in Maryland was also a misdemeanor at common law at the time of the Second Amendment's framing

As Plaintiffs observe in their opening brief, there is simply no historical correlation between Schrader's conviction for simple assault and battery and a felony-level offense—in fact, all forms of battery were historically misdemeanors at common law. *See* Pl. Br. at 38-39 (citing 4 W. Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND 216-18 (1769)). The government provides no evidence to the contrary, and merely points to founding-era sources that used the term "crime" in a way that might include misdemeanor offenses. Def. Reply at 31-32. But this observation has little relevance to the important historical distinction between felonies and misdemeanors.

And notably, the Supreme Court itself has recently observed that "[a]t common law, battery—*all* battery, and not merely battery by the merest touching—was a misdemeanor, not a felony." *Johnson* v. *United States*, 130 S. Ct. 1265, 1271 (2010) (emphasis in original) (citing 4 BLACKSTONE 216-218 (1769); 1 W. LaFave & A. Scott, SUBSTANTIVE CRIMINAL LAW § 2.1(b), at 90 (1986 and Supp. 2003); ALI, MODEL PENAL CODE § 211.1, Comment, p. 175 (1980)). The same can be said of the related offense of "affray"—a common law misdemeanor defined as "the fighting of two or more persons in some public place, to the terror of his majesty's subjects." *See* 4 Blackstone 144 (1769).

In short, the subject of Schrader's conviction was a simple misdemeanor—both under Maryland law and at common law. There is no historical basis for treating it as a felony-level offense.

2.      While certain heightened or aggravated misdemeanor offenses might be
analogized to felony-level crimes, Schrader's conviction for simple common law
misdemeanor assault and battery raises no such issue

While Plaintiffs submit that Schrader's 1968 conviction for simple assault and battery

makes him an ordinary common law misdemeanant, the government takes issue with this

description of Schrader. For example, the government writes in its brief:

> . . . Plaintiffs emphasize the supposed harshness of a lifetime ban on possessing firearms
> on Plaintiff Schrader, whom they quaintly characterize as "an ordinary common law
> misdemeanant."

Def. Reply at 25 (quoting Pl. Br. at 39).

Plaintiffs' characterization is not intended to be quaint, but merely an accurate description

of Schrader's appropriate status for purposes of evaluating his Second Amendment claim. He

was convicted of simple (*i.e.*, non-aggravated) assault and battery, as opposed to a more serious

form such as aggravated assault. Plaintiffs have noted in their opening brief that they do not

foreclose the possibility that certain aggravated misdemeanor crimes that raise heightened

societal dangers might be analogized to felony-level offenses. *See* Pl. Br. at 38, n.14; *see also*,

*e.g.*, *United States* v. *White*, 593 F.3d 1199, 1205-1206 (11th Cir. 2010) (upholding against facial

challenge the federal firearms ban on any person convicted of a "misdemeanor crime of domestic

violence" after analogizing it to the presumptively-constitutional felon-in-possession ban.). But

no such aggravated offense is at issue here.

It is undoubtedly true that many modern criminal offenses have aggravated variants that

simply did not exist at common law, and that it may sometimes be necessary to draw historical

analogies. The application of historical principles to modern scenarios is not uncommon in

American constitutional law. *See*, *e.g.*, *Kyllo* v. *United States*, 533 U.S. 27, 40 (2001) (observing

that the "[t]he Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted" in the context of scrutinizing the use of modern "Thermovision" imaging technology) (citation and quotation omitted). But because Schrader has not been convicted of any aggravated offense, his case here does not raise that issue. Simple assault and battery were offenses that existed at common law, and were classified as misdemeanors. Accordingly, the government's effort to avoid Second Amendment scrutiny by classifying Schrader as a "felon" fails.

> C.     The Government's Attempt To Distinguish The Supreme Court's Strict Scrutiny Framework Fail

It is well-established that any law encroaching upon a core "fundamental right"—a right "deeply rooted" in "our Nation's history, legal traditions, and practices"—must be evaluated under a strict scrutiny standard that generally requires it to be "narrowly tailored to serve a compelling state interest." *Washington* v. *Glucksberg*, 521 U.S. 702, 720-721 (1997); *see also Reno* v. *Flores*, 507 U.S. 292, 302 (1993) (substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.") (citations omitted). The Supreme Court just last term reexamined the core right to keep and bear arms and declared it to be "fundamental." *McDonald*, 130 S. Ct. at 3042 (majority opinion) & 3059 (THOMAS, J. concurring). The government provides no persuasive justification for abandoning the strict scrutiny approach here in evaluating the application of a categorical firearms ban that plainly implicates Schrader's core Second Amendment rights.

The government attempts to makes comparisons to the Court's jurisprudence under the Fourth, Sixth, and Eighth amendments, Def. Reply at 19, but those constitutional provisions are

much more procedural in nature and will therefore rarely implicate a traditional level of means-ends judicial scrutiny (e.g., rational basis, intermediate, or strict scrutiny).[4] The government also draws parallels to the First Amendment context, where the Supreme Court will use different standards of review, depending on whether the particular restriction on speech is content-based or content-neutral.

The government cites *United States* v. *Marzzarella*, 614 F.3d 85 (3d Cir. 2010), where the court observed that, in the First Amendment context, "[s]trict scrutiny is triggered by content-based restrictions on speech in a public forum," but "content-neutral time, place, and manner restrictions in a public forum trigger a form of intermediate scrutiny." *Id*. at 96. The court found "no reason why the Second Amendment would be any different." *Id*. at 96-97. The court did not reject the use of strict scrutiny, but merely applied intermediate scrutiny to a firearms serial number regulation that "d[id] not severely limit the possession of firearms." *Id*. at 97. The court contrasted this regulation with the District of Columbia's gun ban, which, it noted "did not just regulate possession of handguns; [but] prohibited it." *Id*. But the government in this case *is* categorically prohibiting Schrader's possession of any firearms, and so its analogy to a content-neutral speech regulation is misplaced. Because Schrader's core fundamental Second Amendment right to keep a firearm in "the defense of hearth and home" is implicated, his claim is entitled to be evaluated under the strict scrutiny approach that traditionally applies to core fundamental rights.

---

[4]The Fourth Amendment's text contains a "standard of review," in requiring that searches and seizures be "reasonable." U.S. Const. amend. IV, a term that has been given a unique application within the context of the Amendment's subject matter.

11

Finally, the government suggests that strict scrutiny would be inconsistent with *Heller*'s statement about the presumptive validity of certain longstanding firearms prohibitions. Def. Reply at 21; *see also Heller*, 554 U.S. at 626-27 & n.26. Plaintiffs anticipate and address this argument in their opening brief, *see* Pl. Br. at 35-38, but these statements in *Heller* are best read as limitations on the scope of the Second Amendment. For example, felons—as defined by historical analogy to the common law—are simply outside the historical protections of the Second Amendment. *Id*. Thus, just as categorical bans on unprotected speech are entirely consistent with the First Amendment, *see, e.g.*, *New York* v. *Ferber*, 458 U.S. 747 (1982), so too are felon dispossession laws consistent with the Second—even under the framework of strict scrutiny.

D.  The Government's Attempt To Justify Its Application Of A Gun Ban
    Against Schrader Under Intermediate Scrutiny Fails

The government's efforts to justify a firearms ban against Schrader under an intermediate scrutiny standard also fail. Intermediate scrutiny requires a court to determine "whether the measure is substantially related to an important governmental interest." *Heller* v. *District of Columbia*, 698 F. Supp. 2d 179, 188 (D.D.C. 2010) ("Heller II"); *see also Clark* v. *Jeter*, 486 U.S. 456, 461 (1988) (same). And "[s]ignificantly, intermediate scrutiny places the burden of establishing the required fit squarely upon the government." *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (citing *Bd. of Trs.* v. *Fox*, 492 U.S. 469, 480-481 (1989)). The government has not met its burden.

The government begins by pointing to "important governmental interests in protecting public safety and combating violent crime." Def. Reply at 22. While few quarrel with the importance of these interests in the abstract, the government fails to explain how they justify the

12

application of a firearms ban against Schrader and others similarly situated. The government

urges judicial deference to the "predictive judgments" of Congress, *id*. at 23, but as Plaintiffs

point out in their opening brief, the recorded legislative history suggests that no member of

Congress even contemplated the applicability of § 922(g)(1) to common law misdemeanants. Pl.

Br. at 22-23. Furthermore, § 922(g)(1) predated the Supreme Court's intervening decisions in

*Heller* and *McDonald*, and is thus unlikely to have reflected any legislative weighing of Second

Amendment rights at all. *See* Pl. Br. at 43.

Finally, the government offers two statistical studies as supporting evidence for the

application of its ban here. Plaintiffs reject the proposition that statistical studies are appropriate

tools for defining the scope of a fundamental constitutional right.[5] *See Heller*, 554 U.S. at 635-36

("We know of no other enumerated constitutional right whose core protection has been subjected

to a freestanding 'interest-balancing' approach. . . . And whatever else [the Second Amendment]

leaves to future evaluation, it surely elevates above all other interests the right of law-abiding,

responsible citizens to use arms in defense of hearth and home."). But even setting these

objections aside, the studies are unenlightening. Neither provides any elucidating "predictive"

evidence with respect to persons convicted of ordinary (*i.e.*, non-aggravated) common law

misdemeanor offenses—the subject of this lawsuit.

The first is a 2002 Bureau of Justice Statistics study titled "BJS Recidivism Statistics"

[Dkt. # 11, Exh. A]. The government cites it for certain recidivism statistics of prisoners,

---

[5] Plaintiffs also note that neither study was taken into consideration by the enacting
Congress, and intermediate scrutiny does not permit the government to create post hoc
justifications for its laws and policies. *See* Pl. Br. at 42-43; *see also United States* v. *Virginia*,
518 U.S. 515, 533 (1996) (the "justification must be genuine, not hypothesized or invented post
hoc in response to litigation.").

including those who have been convicted of some form of assault. But the study is infected with significant selection bias in that it surveys only *prisoners*. *See*, *e.g.*, *id* at 1. A person sentenced to time in *prison* after an assault conviction is likely to have committed a particularly aggravated form of assault, or to have appeared before the sentencing court with an extensive criminal record. Indeed, the subjects of the study were serving average prison sentences of five years. *Id* at 3. More problematic, the study does not purport to limit itself to simple assault, but instead includes a number of very serious offenses such as aggravated assault, sexual assault, and the use of deadly weapons. *Id.* at 15. The data therefore has little relevance to Schrader, who has never been in prison, and whose conviction was for a simple form of misdemeanor common law assault. It also unlikely to have much predictive value for the vast majority of simple misdemeanor assault convicts, most of whom are likely ordered to pay a fine (as in Schrader's case) or to serve a short jail[6] sentence.

The second study is a National Institute of Justice report [Dkt. # 11, Exh. B] ("NIJ Report"), which purports to study to effectiveness of a California state law under which persons convicted of certain violent misdemeanors could be denied from purchasing handguns. The government cites this study for its claim that "the denial of handgun purchase was associated with a moderate decrease in risk for new gun and/or violent crime." Def. Reply at 24 (quotation and citation omitted). The measured decrease was indeed quite moderate; the study found it to drop only from 23.9% to 20.1%. *See* NIJ Report at 37. The study also appears vulnerable to

---

[6] The government claims that the report studies persons released after serving "jail time." Def. Reply at 24. While we are certain that the government intended to use this term in the colloquial sense, we note that the study appears to *specifically exclude* persons sentenced to time in "jail" as opposed to a prison. *See* NIJ Report at 13 (noting that "some persons received in New York jails were probably *mistakenly classified* as prison returns.") (emphasis added).

14

significant methodological criticism. For example, it apparently reached its conclusion by comparing denied California gun transactions in 1991 (pursuant to a state gun law) with gun transactions during 1989-90 (before the denial law took effect). *Id*. at 1. This prompted one commentator to suggest that the measured decrease may simply be explained by an overall drop in crime over the same time period, though the study's authors downplay this concern. *Id*. at 43. The study's authors admit to other methodological vulnerabilities as well, particularly in light of its small sample size.[7]

In sum, the government fails to carry its burden of justifying its application of a federal firearms ban to ordinary common law misdemeanants—including those convicted of non-aggravated forms of simple misdemeanor assault and battery. Accordingly, that ban fails even if evaluated under a standard of intermediate scrutiny.

## III.   THE GOVERNMENT'S OPPOSITION BRIEF RAISES NO GENUINE DISPUTE OF MATERIAL FACT

The government's Response to Plaintiffs' Statement of Undisputed Material Facts and Statement of Genuine Issues [Dkt. # 12, Exh. 1] claims that there are two disputed issues of fact. But neither are genuine material issues.

The first claimed factual issue is "[w]hether Plaintiff Schrader intends to possess a firearm imminently and, if so, at what time, in what place, and in what manner." *Id*. at 7, ¶ 1. The

---

[7] *See* NIJ Report at 44 ("Our findings are subject to several limitations. The small size of the study population limited our statistical power to detect relative risks that were below approximately 1.25, or higher for subgroup analyses. When relative risks are below 1.5, results should be interpreted with caution regardless of the size of the study population due to the potential impact of unmeasured factors."); *see also id*. at 32 ("Unfortunately, California's criminal records did not reliably distinguish between violent crimes that involved guns and those that did not.")

government claims uncertainty over this issue, which is alleged to implicate Schrader's standing to bring suit. Def. Reply Br. at 7.

Plaintiffs maintain that this is not a genuine issue of fact: Schrader would not have filed this lawsuit were it not for his present intent to purchase and possess in his home the very firearms that the government has twice denied (and continues to deny) his efforts to obtain for purposes of self-defense. *See* Am. Compl. [Dkt. # 6] at ¶¶ 14-16. The Complaint further avers that "Plaintiff SAF's members and supporters, including Plaintiff Schrader, are directly impacted by application of 18 U.S.C. § 922(g)(1) to misdemeanor offenses." *Id.* at ¶ 17.

Fed. R. Civ. P. 8 adopts a notice pleading standard, which requires pleadings to be concise and contemplates that they will "be construed so as to do justice." *Id.* It is at least pedantic, if not silly, to insist that Schrader literally spell out that he has a present intent to possess and use the firearms, the confiscation and denial of which form the basis of his 18 U.S.C. § 925A and Second Amendment complaint.

Even in the context of a pre-enforcement claim, the D.C. Circuit has rejected such formalism. In *Ord* v. *District of Columbia*, 587 F.3d 1136 (D.C. Cir. 2009), plaintiff challenged a District of Columbia firearms disability that had generated a warrant for his arrest, thereby disrupting his travel to and business within the city. The city claimed that plaintiff lacked standing because he did not specify a present intent to engage in the prohibited conduct. The D.C. Circuit was unimpressed.

> To be sure, as the District of Columbia emphasizes, Ord never alleges in so many words that he intends to enter the District of Columbia while armed. But at this stage of the litigation, we must make all reasonable inferences in Ord's favor, and viewed through that lens, Ord's complaint and affidavit can only be understood to mean that if the threat of arrest is removed, he intends to travel to D.C. while armed to engage in his security business . . . Moreover, Ord's request for relief--a declaratory judgment and an injunction

16

prohibiting the District of Columbia from enforcing its firearms laws against him--makes sense only if he actually intends to return to D.C. while armed to service his clients.

*Ord*, 587 F.3d at 1143 (internal citation omitted) (citing *Seegars* v. *Ashcroft*, 396 F.3d 1248, 1251 (D.C. Cir. 2005) for proposition that "plaintiff need not express an unconditional intent to engage in the prohibited behavior regardless of whether the statute is invalidated.").

   *Ord* is completely on-point. Schrader's request for declaratory and injunctive relief likewise "makes sense only if he actually intends" to do that which has been forbidden him.

   In what may well be an excess of caution, to remove all doubt, and in the interest of narrowing the scope of the parties' disagreement before this Court, Plaintiffs attach a Second Declaration of Jefferson Wayne Schrader, in which he declares:

> I filed this lawsuit because I presently intend to purchase and possess a handgun and long gun for self-defense within my own home. I am prevented from doing so only by the Defendants in this case, who have twice denied my attempts to obtain such firearms, and who have advised me that federal law disqualifies me from purchasing or possessing such firearms.

Schrader Decl., April 19, 2011, ¶ 1. Plaintiffs are also filing a separate motion for leave to amend paragraph 1 of the complaint to read as follows:

> Plaintiff Jefferson Wayne Schrader is a natural person and citizen of the State of Georgia and of the United States. *Mr. Schrader presently intends to purchase and possess a handgun and long gun for self-defense within his own home, but is prevented from doing so only by defendants' active enforcement of unconstitutional policies complained of in this action.*

(emphasis reflects amended language). Plaintiffs trust that this amendment, coupled with Schrader's Second Declaration, will eliminate any hypothetical doubts that the government might have over Schrader's present intention to possess the very firearms that the government has denied him the ability to purchase.

17

The second claimed factual issue is "[w]hether Plaintiff Schrader has had his conviction for assault expunged by the State of Maryland or made any attempt to request a pardon." Def. Statement of Genuine Issues at 7, ¶ 2. This too is alleged to implicate Schrader's standing to bring suit. The government argues that Schrader's appropriate "avenue of relief . . . is to have the conviction expunged, overturned or made the subject of a pardon," Def. Reply at 36, n.13, and that Schrader is therefore required to "exhaust" these "available administrative remedies" before bringing suit. *Id*. at 9.

As a starting point, Plaintiffs note that Maryland law does not even allow for the expungement of criminal convictions without a pardon, except for a limited number of minor nuisance crimes not at issue here. MD. CRIMINAL PROCEDURE CODE ANN. § 10-105(8) & (9). Thus, Schrader's only remaining hope is to seek executive pardon of his 1968 conviction by the Governor of Maryland. *See* 18 U.S.C. § 921(a)(20).

But Plaintiffs are challenging the full application of the government's firearms ban against common law misdemeanants—including its extremely narrow escape hatch. That ban is directly blocking Schrader from exercising a fundamental constitutional right to keep a handgun and long gun in his home for self defense. Its constitutional deficiencies cannot be cured by offering him—and others similarly situated—a remote hope of relief that depends upon a discretionary act of clemency by an executive official. Accordingly, the issue of whether Schrader has sought an executive pardon is immaterial.

IV.   PLAINTIFFS RESPECTFULLY WITHDRAW THEIR ALTERNATIVE CIVIL
      RIGHTS RESTORATION ARGUMENT UNDER 18 U.S.C. § 921(a)(20)

Plaintiffs respectfully withdraw their argument that Schrader qualifies for alternative statutory relief under 18 U.S.C. § 921(a)(20) on the grounds that his right to serve on a jury in

Maryland has been restored. *See* Pl. Br. at 26-29. While Plaintiffs' opening brief cited a statutory committee note that supported this argument, Plaintiffs have since learned that this committee note is mistaken.

Section 921(a)(20) creates a statutory exemption for an otherwise disqualified person whose "civil rights"—those to vote, hold elective office, and serve on a jury—have been taken away and later restored by the convicting jurisdiction. *See United States* v. *Bost*, 87 F.3d 1333, 1335 (D.C. Cir. 1996); *see also Caron* v. *United States*, 524 U.S. 308, 313 (1998). Schrader argued in his opening brief that a recently recodified Maryland statute had the effect of restoring to him jury rights that he had previously lost. In its current form, that statute does not apply to Schrader because it disqualifies only those convicts who have received an actual sentence of imprisonment for more than 6 months:

> (b) Disqualifying factors. -- Notwithstanding subsection (a) of this section and subject to the federal Americans with Disabilities Act, an individual is not qualified for jury service if the individual:
> . . .
>> (4) Has been convicted, in a federal or State court of record, of a crime punishable by imprisonment exceeding 6 months and *received a sentence of imprisonment for more than 6 months*;

Md. CJ Code Ann. § 8-103(b)(4) (2011) (emphasis added). However, that statute's Committee Note suggests that the preceding version of the statute did in fact apply broadly enough to take away Schrader's right to jury service:

> Subsection (b)(4) and (5) of this section is new language substituted for *former CJ § 8-207(b)(5) and (6), which excluded individuals based on a crime "punishable by a fine of more than $500, or by imprisonment for more than six months, or both"* or a charge of willful misrepresentation to avoid jury service. The substitution uses crimes "punishable by imprisonment exceeding 6 months" (instead of the infamous crime standard in Art. I § 4 of the Maryland Constitution as implemented by current EL § 3-102(b) and (c)).

Committee Note, MD. CJ CODE ANN. § 8-103.

Plaintiffs faithfully cited this Committee Note in their opening brief. Pl. Br. at 27-28.[8]

However, Plaintiffs have since learned that their reliance on this Committee Note was misplaced, as the superceded statute actually reads as follows:

> (b) Grounds for disqualifications. -- A person is qualified to serve as a juror unless he:
> . . .
>> (5) Has a charge pending against him for a crime punishable by a fine of more than $ 500, or by imprisonment for more than six months, or both, or has been convicted of such a crime *and has received a sentence* of a fine of more than $ 500, or *of imprisonment for more than six months*, or both, and has not been pardoned;

MD. CJ CODE ANN. § 8-207(b)(5) (2004). Accordingly, it appears that Schrader never in fact lost his right to serve on a jury. And because the civil rights restoration exemption "do[es] not cover the case of an offender who lost no civil rights" as a consequence of his or her conviction, *Logan* v. *United States*, 552 U.S. 23, 37 (2007), it is unavailable to Schrader in this case. Plaintiffs regret the error, and respectfully withdraw the argument.

---

[8]Plaintiffs are constrained to note that the government, too, relied on a secondary source to locate the previous content of the statute at issue. Def. Br. at 37 (citing *Owens* v. *State*, 906 A.2d 989, 1007-08 (Md. App. 2006)). Counsel will redouble their effort to avoid reliance on even presumably authoritative secondary sources such as Committee Notes. However, the government's charge of selective quotation is false and unwarranted.

CONCLUSION

Plaintiffs have stated each of their claims and are entitled to summary judgment. The

government's imposition of a categorical, lifetime ban on Mr. Schrader's ability to possess a

firearm has no basis in federal law and violates his individual right to keep and bear arms

enumerated in the Second Amendment. Accordingly, he is entitled to the removal of his firearms

disability from the NICS computer database pursuant to 18 U.S.C. § 925A, as well as an order

permanently enjoining Defendants from enforcing a firearms ban against ordinary common law

misdemeanants who face no other disqualifying barriers to firearms ownership.

Dated: April 21, 2011                          Respectfully submitted,

                                               Alan Gura (D.C. Bar No. 453449)
                                               Thomas M. Huff (D.C. Bar No. 978294)
                                               Gura & Possessky, PLLC
                                               101 N. Columbus Street, Suite 405
                                               Alexandria, VA 22314
                                               703.835.9085/Fax 703.997.7665

                                       By:     /s/ Alan Gura
                                               Alan Gura

                                               Attorneys for Plaintiffs

21