# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEFFERSON WAYNE SCHRADER and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 10-1736 (RMC) |
| ERIC HOLDER, Attorney General, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## <u>DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

Defendants, Attorney General Eric Holder, the Federal Bureau of Investigation, and the United States respectfully move to dismiss this case pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. In short, the First Claim for Relief fails to state a valid claim, and Plaintiffs lack standing to bring their claims. Further, the provisions they seek to challenge do not violate the Second Amendment. The grounds for this motion are set forth fully in the accompanying Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss the Second Amended Complaint.

Undersigned counsel did not consult with counsel for Plaintiffs because this is a potentially dispositive motion. <u>See</u> Local Civil Rule 7(m).

Dated: June 17, 2011.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Civil Chief


By:      /s/ *Jane M. Lyons*
         JANE M. LYONS, D.C. Bar. # 451737
         Assistant United States Attorney
         555 Fourth St., N.W. - Room E4104
         Washington, D.C.  20530
         Phone: (202) 514-7161
         Fax: (202) 514-8780
         jane.lyons@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEFFERSON WAYNE SCHRADER and<br>SECOND AMENDMENT FOUNDATION, INC., )<br><br>Plaintiffs,<br><br>v.<br><br>ERIC HOLDER, Attorney General, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 10-1736 (RMC)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Plaintiffs, a United States citizen who appears to reside in Georgia (Mr. Schrader) and an organization that claims to advocate against gun control (Second Amendment Foundation or "SAF"), bring this lawsuit seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that two federal firearms provisions—18 U.S.C. §§ 921(a)(20)(B) & 922(g)(1)—are unconstitutional. Together, the challenged provisions make possession of a firearm unlawful for persons with a misdemeanor conviction in any court, provided the offense is punishable by more than two years in prison. The individual plaintiff, Mr. Schrader, admits in the Second Amended Complaint that he was convicted of assault by the State of Maryland in 1968, and he alleges that his past efforts to obtain firearms from federally licensed dealers have been thwarted twice because of his 1968 conviction. Plaintiff Second Amendment Foundation ("SAF") alleges that the government's enforcement of the challenged provisions negatively impacts its resources and violates the rights of its members under the Second Amendment. This case should be dismissed.

Despite Plaintiffs' best efforts to amend their allegations and arguments to mold their challenge to look like a recent case, *Dearth v. Holder*, in which the D.C. Circuit found that another disappointed would-be firearm holder had sufficiently alleged the injury prong of constitutional standing to challenge a completely different statute, this case is materially different.  As explained below, Mr. Schrader's challenge is not comparable to Mr. Dearth's.  Further, although SAF was also a plaintiff in *Dearth*, the D.C. Circuit did not address its standing because it had no need to do so.  Here, SAF lacks standing because it does not allege that either it or any of its members is currently suffering some cognizable injury on account of the challenged laws.  As a result, SAF's constitutional claim must be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Plaintiff Schrader also lacks standing to pursue the constitutional claim he shares with Plaintiff SAF.  Moreover, even if the Plaintiffs have standing, the constitutional claim fails as a matter of law.

With respect to Plaintiff Schrader's challenge to the information about him accessible by the National Instant Criminal Background Check ("NICS") system, he fails to state a valid claim.  As a result, this case should be dismissed in its entirety.

## FEDERAL STATUTORY REGULATION OF INTERSTATE FIREARMS SALES

The Second Claim for Relief in this lawsuit challenges the constitutionality of two provisions of the federal firearms laws that impose conditions on the possession of firearms by people who have been convicted of qualifying criminal offenses.  The first of these provisions, 18 U.S.C. § 922(g)(1), makes it unlawful, as relevant here, for certain defined categories of convicted persons to possess firearms.  Section 922(g)(1) prohibits firearm possession by any person "who has been convicted in any court of, a crime punishable by imprisonment for a term

exceeding one year." 18 U.S.C. § 922(g)(1).  The definitions for the terms used in § 922 are set

forth in 18 U.S.C. § 921.  18 U.S.C. § 921(a)(20)(B) defines the term "crime punishable by

imprisonment for a term exceeding one year" as not including "any State offense classified by the

laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or

less."[1]

The First Claim, brought solely by Plaintiff Schrader, arises out of the alleged

cancellation of two attempts he made to purchase or obtain firearms in 2008-2009 allegedly

based on information about Plaintiff Schrader revealed during the required background check by

the National Instant Criminal Background Check System ("NICS"), which is administered by the

FBI.  *See* 2nd Am. Compl. ¶¶ 13-16.[2]  Under the Brady Handgun Violence Prevention Act, Pub.

L. 103-159, 107 Stat. 1536 (1993), the United States Attorney General was charged with

establishing NICS, which Federal Firearms Licensees ("FFLs") must contact for a background

---

[1]   Although Section 922(g)(1) is sometimes referred to colloquially as the felon-in-possession
statute, that description is underinclusive.  *See United States v. Williams*, No. 09-00044-CG-C,
2009 U.S. Dist. LEXIS 70299, at *3 (S.D. Ala. Aug. 11, 2009) ("In fact, felon-in-possession is a
misnomer because it is possible under 18 U.S.C. §§ 922(g)(1) and 921(a)(20)(B) for a
misdemeanor conviction to disqualify a person from possessing a firearm.").  Indeed, an offense
classified by a State as a misdemeanor may serve as predicate for a felon-in-possession
conviction under § 922(g)(1), provided "'the offense is punishable by more than two years in
prison.'"  *See id.* at *3 (citation omitted).  Indeed, neither Section 922(g)(1) nor Section
921(a)(20)(B) include the term "felony."  Accordingly, "the question is not whether Defendant's
conviction is currently a misdemeanor, but rather what was the possible punishment at the time
he was convicted."  *Id.* at *3-4; *United States v. Smith*, No. 08-00389-WS, 2009 U.S. Dist.
LEXIS 28166, at *14 (S.D. Ala. Mar. 27, 2009) ("Fundamentally, whether an offense is labeled a
felony or a misdemeanor under state law does not matter for § 922(g) purposes . . . What does
matter is whether the underlying conviction is one for a 'crime punishable by imprisonment for a
term exceeding one year.'") (citing 18 U.S.C. § 922(g)(1)), *aff'd*, No. 10-10280, 2010 U.S. App.
LEXIS 20239 (11th Cir. Sept. 30, 2010) (unpublished per curiam).

[2]   Plaintiffs' well-pleaded allegations of fact are accepted as true for purposes only for purposes
of resolving Defendants' Motion to Dismiss the Second Amended Complaint.

check prior to transferring a firearm to a non-licensed person, in order to determine if the individual is prohibited under federal or state law from possessing a firearm.  Pub. L. 103-159 § 102(b), codified at 18 U.S.C. § 922(t).[3]

Section 922(g)(1), in combination with section 921(a)(20(B) and NICS, are an integral part of Congress's regulation of interstate and international firearms.  They work in concert with other federal firearms provisions that (1) generally limit interstate transactions in firearms to transactions between licensed individuals, *see* § 922(a)(1), (a)(2), (e), (f); (2) generally prevent individuals from transporting firearms received outside of their state of residence into their State of residence, *see* § 922(a)(3), and (3) prohibit false statements when acquiring a firearm from a licensed dealer, *see* § 922(a)(6).  *See generally Navegar, Inc. v. United States*, 192 F.3d 1050, 1060-61 & n. 6 (D.C. Cir. 1999) (describing § 922's regulation of interstate commerce in firearms).  Congress's "principal purpose" in enacting these provisions was "to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." *Id.* at 1063 (quoting H.R. Rep. No. 90-1577, at 6 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 4410, 4411).

The creation of this regulatory regime was based on legislative findings that "existing Federal controls over [interstate traffic in firearms] do not adequately enable the states to control this traffic within their own borders through the exercise of their police power;" that such traffic "is a significant factor in the prevalence of lawlessness and violent crime in the United States;" and "that only through adequate Federal control over interstate and foreign commerce in these

---

[3]   The Attorney General has delegated the authority and power to perform this function to the FBI.  *See* 28 C.F.R.§§ 0.85(b), 25.1, &  25.3.  Guidelines pertaining to the establishment, maintenance, and use of NICS are set forth in 28 C.F.R. §§ 25.1 through 25.11.

weapons, and over all persons engaging in the business of importing, manufacturing, or dealing in them, can this grave problem be properly dealt with, and effective State and local regulation of this traffic be made possible."[4]  And, Congress specifically found "that the sale or other disposition of concealable weapons [(*i.e.*, handguns)] by importers, manufacturers, and dealers holding Federal licenses, to nonresidents of the State in which the licensees' places of businesses are located, has tended to make ineffective the laws, regulations, and ordinances in the several States and local jurisdictions regarding such firearms."  *Id.*

## FACTUAL ALLEGATIONS

Plaintiff Schrader admits that he punched a person with whom he had a "dispute" on July 23, 1968 in Annapolis, Maryland.  2nd Am. Compl. ¶ 10.  Plaintiff Schrader was not in his home at the time, and does not claim to have been provoked that day.  *Id*.  Although Plaintiff Schrader alleges that he believed that his victim could have been among a group of people who had previously assaulted him earlier in the same month (*id*. ¶ 9), he fails to allege any facts either to support  his purported identification or to suggest he was in any fear that he was about to be harmed in any way on July 23, 1968 when he punched the other person.  *Id.*[5]  And although

---

[4]   Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Title IV, § 901, 82 Stat. 225 (1968); *see also* Gun Control Act of 1968, Pub. L. No. 90-618, § 101 (1968), 82 Stat. 1213-14 (purpose of Gun Control Act is to "provide support to Federal, State, and local law enforcement officials in their fight against crime and violence.").  The factual findings of the Omnibus Crime Control and Safe Streets Act of 1968 are equally applicable to the Gun Control Act of 1968.  *See Navegar*, 192 F.3d 1063 & n.8.

[5]   Plaintiff Schrader also does not claim to have reported to any law enforcement authorities the "violent assault[]" by a "street gang" he claims to have been the victim of earlier in the same month in Annapolis.  *See* 2nd Am. Compl. ¶ 9.

Plaintiff Schrader further admits that a police officer was "nearby," *id*, Plaintiff Schrader punched the victim instead of summoning assistance from the police.

Based on these allegations, there can be no doubt, even under Plaintiff Schrader's own description of his conduct, that he committed a crime of some violence. Although resolution of this case does not depend on an element of violence being present, of greater significance is Plaintiff Schrader's admission that he was convicted by the State of Maryland on July 31, 1968 of misdemeanor assault and battery, and that he paid a fine of $109. *See* 2nd Am. Compl. ¶ 11. Consequently, the existence of an accurate record reflecting Plaintiff Schrader's conviction for assault and battery in Maryland in 1968 is not in dispute.

Since 2008, Plaintiff Schrader alleges that two attempted purchases of firearms for his use were thwarted based on information accessed by the NICS system based on his 1968 assault conviction in Maryland. *See* 2nd Am. Compl. ¶¶ 14-16. Plaintiff Schrader admits that his assault conviction exists, *id*. ¶ 11, and thus that the information accessed by the NICS system is accurate. However, he appears to contend that his conviction should not disqualify him from purchasing firearms as a matter of law because, as alleged in the Second Amended Complaint, at the time of Schrader's conviction in 1968, Maryland law did not set a maximum sentence for misdemeanor assault. *See id*. ¶13. Thus, the only sentencing limitation was the Eighth Amendment's prohibition against cruel and unusual punishment. *See id*. These facts are also not in dispute.

Plaintiff SAF "is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington." 2nd Am. Compl. ¶ 2. SAF claims to have "over 650,000 members and supporters nationwide," *id.*, but does not allege

that any of its members other than Mr. Schrader have been unable to purchase a firearm on account of the statutory provisions SAF seeks to challenge here.

## ARGUMENT

### I.    Standards of Review

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter."  When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the allegations of the complaint must be construed in favor of the pleader.  *See Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  The Court need not accept factual inferences drawn by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  *See Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

With regard to the claims themselves, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," and a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 & n.3 (2007); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (May 18, 2009) (holding that even when a complaint contains factual allegations that are "consistent with" illegal conduct, the complaint cannot survive a motion to dismiss when the allegations are "more likely" explained by legal

conduct).[6]  Thus, to survive a motion under Rule 12(b)(6), "the complaint must set forth

sufficient information to suggest that there exists *some* recognized legal theory upon which relief

can be granted." *Gregg v. Barnett*, 771 F.2d 539, 547 (D.C. Cir. 1985) (emphasis in original and

citation omitted).

## II.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE SECOND CLAIM FOR RELIEF BECAUSE NEITHER PLAINTIFF HAS STANDING

The Second Claim for Relief in the Complaint seeks a declaration that the enforcement of

§ 922(g)(1) against Plaintiff Schrader and unidentified members of Plaintiff SAF based on

misdemeanor convictions violates the Second Amendment.  *See* 2nd Am. Compl., ¶ 22.

### A.   Standing Requirements

Plaintiffs bear the burden of establishing subject matter jurisdiction, including the

elements of standing, for each claim.  *Northeastern Fla. Chapter, Associated Gen. Contractors*

*of Am. v. City of Jacksonville*, 508 U.S. 656, 663 (1993); *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560-61 (1992).  Standing cannot be "inferred argumentatively from averments in the

pleading," but, rather, plaintiffs "must allege facts essential to show jurisdiction." *FW/PBS, Inc.*

*v. City of Dallas*, 493 U.S. 215, 231 (1990) (citations omitted).  Where "the parties invoking

federal jurisdiction are not 'the object of the government action or inaction' they challenge,"

"standing is 'substantially more difficult to establish.'" *Public Citizen, Inc. v. Nat'l Highway*

*Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007) (quoting *Lujan*, 504 U.S. at 562).

---

[6]   *Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 129 S. Ct. 1109, 1123 (2009)
(emphasizing that *Twombly* established a more stringent standard for motions to dismiss than the
standard used by lower courts applying the previous "no set of facts" framework from *Conley v.*
*Gibson*).

To invoke federal subject matter jurisdiction, a party must establish as a threshold matter the existence of a "justiciable controversy" with the defendant – one that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).  To establish constitutional standing, a plaintiff must satisfy three requirements.  First, a plaintiff must show an "injury-in-fact," which is defined as "an invasion of a legally protected interest that is (a) concrete and particularized [meaning that the injury must affect the plaintiff in a personal and individual way], and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 & n.1 (citations and quotation marks omitted); *see also Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972) ("the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured").

Second, the plaintiff must demonstrate a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560.  This means that the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result[] [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).  Third, the injury in question must be redressable by the relief sought by the complaint.  This means that it "must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38); *see also Allen v. Wright*, 468 U.S. 737, 750-51 (1984).

In addition to the constitutional requirements for standing, the Court must consider whether any prudential limitations should restrain it from exercising its judicial power.  *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979).  Among the prudential

limitations identified by the Supreme Court are the doctrines that (1) a plaintiff cannot rest his claim to standing on the rights and interests of third-parties, *Lujan*, 504 U.S. at 562; *Simon*, 426 U.S. at 44-45; *Warth*, 422 U.S. at 499; (2) the plaintiff must be in the zone of interests meant to be protected by the statute in question, in order to have standing to challenge the government's application of the statute, *Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 127 (1995); and (3) a plaintiff cannot rely on a generalized grievance shared by a large segment of the populace, *Gladstone Realtors*, 441 U.S. at 100; *Warth*, 422 U.S. at 499.  *See also McKinney v. United States Dep't of Treasury*, 799 F.2d 1544, 1550-51 (Fed. Cir. 1986).

There are two ways for an organization to establish standing to bring suit.  First, to have organizational standing, plaintiff organizations must satisfy the same standing requirements that apply to individuals:  an injury-in-fact, that is fairly traceable to the challenged action, and that will likely be redressed by a favorable decision.  *See American Legal Found. v. FCC*, 808 F.2d 84, 89 (D.C. Cir. 1987) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)).  Second, to have representational standing, an organizational plaintiff must demonstrate that its "members would otherwise have standing to sue in their own right, [that] the interests at stake are germane to the organization's purpose, and [that] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180-81 (2000).[7]

---

[7]   *Accord American Legal Found. v. FCC*, 808 F.2d 84, 89 (D.C. Cir. 1987) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).  Thus, at least one member must be able to personally demonstrate all of the elements of Article III standing: (1) an injury-in-fact; (2) traceable to the challenged action of the defendant; and (3) redressable by a

(continued...)

Finally, the Second Claim for Relief seeks relief under the Declaratory Judgment Act. 28 U.S.C. § 2201. To proceed under the Declaratory Judgment Action, a plaintiff "must demonstrate 'a case of actual controversy.'" *See Hodgkins v. Holder*, 677 F. Supp. 2d 202, 203 (D.D.C. 2010), *rev'd on other grounds sub nom. Dearth v. Holder*, 2011 WL 1437379 (D.C. Cir. April 15, 2011). "[U]nlike many causes of action, the Declaratory Judgment Act does not authorize remedies for past injuries alone." *Hodgkins*, 677 F. Supp.2d at 203. Instead, under the Declaratory Judgment Act, "a constitutional question 'must be presented in the context of a live grievance.'" *Id.* at 203-04 (citation omitted).

B.    **Plaintiff Schrader Fails To Demonstrate His Standing To Bring the Second Claim for Relief**

The allegations in the Second Amended Complaint ("Complaint") fail to establish that Plaintiff Schrader has standing to bring the Second Claim for Relief for several reasons. First, he fails to identify a sufficient injury in fact because there is only a vague allegation that he "presently intends to purchase and possess a handgun and long gun" without any particulars about where, when, or how he might accomplish this. *See* 2nd Am. Comp. ¶ 1. These details could be significant, if for no other reason, than to assess the viability of a hypothetical acquisition as a matter of the applicable state law. Notably, Mr. Schrader does **not** allege that he would seek to revive or pursue either of the firearms transactions alleged in the Second Amended Complaint. Second, even if Plaintiff Schrader had alleged a cognizable injury, the absence of allegations concerning where Plaintiff Schrader might attempt future purchases or possession of firearms and

---

[7] (...continued)
favorable decision. *Friends of the Earth, Inc.*, 528 U.S. at 180-81; *see also Hunt*, 432 U.S. at 343; *Warth*, 422 U.S. at 511.

what type of firearms prevents him from satisfying the traceability and redressability prongs of the test for standing.

Plaintiff Schrader's alleged injury—his past inability to legally acquire or possess a firearm– is not "presently" harming him; it will arise only if he attempts to acquire a firearm in the future. Although the Complaint now vaguely alleges that "Mr. Schrader presently intends to purchase and possess a handgun and long gun for self-defense within his own home," (2nd Am. Compl. ¶ 1), there are no particulars either there or in the declaration he previously filed with this Court in this case about when, how, where, and what exactly he would purchase or possess so as to render this alleged injury truly "imminent." *Parker v. District of Columbia*, 478 F.3d 370, 374 (D.C. Cir. 2007), *rev'd in part on other grounds sub nom. Heller v. District of Columbia*, 128 S. Ct. 2783 (2008). To allege an "actual controversy" under the Declaratory Judgment Act, it is not sufficient for Plaintiff Schrader to assert generally that he might one day seek to purchase a firearm (which he does not) because more "immediate and concrete plans are necessary." *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987). As the Supreme Court has explained, "'some day' intentions—without any description of concrete plans, or indeed any specification of when the someday will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564; *see also Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) ("Plaintiffs' assertions that they 'wish' or 'intend' to engage in proscribed conduct is not sufficient to establish an injury-in-fact under Article III.") (citing *Lujan*, 504 U.S. at 564).

Plaintiff Schrader's Notice of Supplemental Authority [ECF No. 15] erroneously suggests that the D.C. Circuit's decision this year in *Dearth v. Holder*, 2011 WL 1437379 (D.C. Cir. April 15, 2011), resolves the standing question in his favor. In *Dearth*, the citizen challenged the statute

barring the transfer of firearms to persons who do not reside in the United States, except for "lawful sporting purposes." Dearth challenged the requirement that he provide a U.S. residency on a form. *Id*. at *2. Because he pleaded facts that demonstrated that it was clear that he would be unable to acquire a firearm legally in the face of "Dearth's best efforts," the D.C. Circuit found that Dearth had shown an injury sufficient to establish standing to sue.[8] That is not the case here.

Here, the allegations in the Complaint are too vague for the Court to conclude that any injury concerning future firearms purchase or possession is traceable to the defendants or redressable by the Court. Although Plaintiff Schrader alleges that he is a resident of the State of Georgia (2nd Am. Compl. ¶ 1), he fails to note where either of the aborted firearms purchases took place, other than to allege that one was "local." *See* 2nd Am. Compl. ¶ 14. The meaning of the term "local" is imprecise and can encompass multiple states, and State gun laws could supply independent grounds for preventing Plaintiff Schrader from purchasing or possessing firearms. Such ambiguous allegations prevent the Court from concluding that either the traceability or redressability elements of standing are present here. Moreover, citizens in Dearth's shoes are more clearly within the coverage of the Second Amendment because they do not have valid criminal convictions.

This case is easily distinguishable from *Ord v. District of Columbia*, 587 F.3d 1136 (D.C. Cir. 2009), where the D.C. Circuit held that a private security officer had standing to challenge District of Columbia firearms laws because he had shown a "credible and imminent threat of

---

[8] The D.C. Circuit declined to address in *Dearth* whether SAF had standing. *Dearth*, 2011 WL 1437379, at *4 n.* ("Nor, because the SAF raises no issue not also raised by Dearth, need we decide whether it has standing."). The District Court had found that SAF lacked standing. *See Hodgkins*, 677 F. Supp. 2d at 203-06.

prosecution." *See id.* at 1142.  Among other things, a warrant had been issued for Ord's arrest for carrying a firearm without a license, and certain of Ord's employees had been arrested for similar conduct.  *See id.* at 1138, 1141-42.  Plaintiff Schrader does not allege, nor could he, that any of these circumstances is present in his case.

Although Plaintiff Schrader alleges that he has been informed that information accessible to the NICS was a basis for disallowing the pair of firearms transactions alleged in the Complaint (2nd Am. Compl. ¶15), Plaintiff Schrader fails to allege that he has been singled out for prosecution.  He identifies his own and a companion's affirmative conduct (initiating purchase of a firearm from a federally licensed dealer) that began a chain of events culminating in the government providing Plaintiff Schrader with information about his 1968 Maryland assault conviction being accessible to NICS and the apparently voluntary cessation by Plaintiff Schrader of efforts to obtain firearms.  *See* 2nd Am. Compl. ¶ 15.  As alleged in the Complaint, there is no credible threat of prosecution and Plaintiff Schrader is not currently being denied anything by defendants.  Further, Schrader's admissions about the accuracy of the NICS information negate the traceability and redressability elements.

Plaintiff Schrader alleges that he was unable to purchase a firearm in the past; he now makes a vague allegation that he intends to purchase or possess firearms in the future.  As a matter of law, Plaintiff Schrader fails to demonstrate an injury-in-fact or a credible threat of prosecution and thus lacks standing to challenge the constitutionality of § 922(g)(1).  Because he fails to identify a concrete, imminent injury in fact and to allege facts demonstrating an injury that is traceable to the defendants and redressable by the Court, Plaintiff Schrader lacks standing to maintain the Second Claim for Relief.

**C.      Plaintiff SAF Lacks Standing for Its Constitutional Challenge**

Plaintiff SAF alleges that its purposes "include education, research, publishing and legal actions focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control." 2nd Am. Compl., ¶ 2. Plaintiff SAF alleges it has "over 650,000 members and supporters nationwide." *Id*. But Plaintiff SAF also fails to indicate who these members are or whether these members have even visited a federally-licensed dealer, much less attempted to purchase such a weapon and been unable to do so based on information in the NICS system indicating that they were convicted of misdemeanor convictions. Nor does Plaintiff SAF claim that its members have been threatened with federal action of any kind. At most, Plaintiff SAF claims that the laws at issue limit access to firearms for people with convictions for misdemeanors carrying a potential sentence of imprisonment of greater than two years. For itself, Plaintiff SAF fails to identify any actions that it has been required to undertake because of the challenged statutes. As explained below, Plaintiff SAF cannot establish standing either to sue on its own behalf or as a representative of its members.

Plaintiff SAF cannot establish organizational standing here. *See Common Cause v. FEC*, 108 F.3d 413, 417 (D.C. Cir. 1997) (citing *Hunt*, 432 U.S. at 343). The burden of establishing these requirements rests squarely on Plaintiff SAF, and it must meet that burden by alleging facts that "affirmatively" and "clearly" demonstrate standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *see also U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24-25 (D.C. Cir. 2000). At most, SAF alleges merely that it expends resources "responding to inquiries" about § 922(g)(1). 2nd Am. Compl. ¶ 22. This amorphous claim of harm amounts to purely voluntary conduct and does not suffice for organizational standing, as this Court previously found in

*Hodgkins*.  *See Hodgkins*, 677 F. Supp. 2d at 206 (holding SAF had failed to allege "any sufficient injury," reasoning that SAF's "voluntary act of teaching cannot plausibly be the basis for a claim of constitutional injury."); *see also Fair Employment Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994) (rejecting the proposition that time and money incurred by a plaintiff in bringing suit is sufficient to confer standing; deeming this "a circular position that would effectively abolish the [standing] requirement altogether.").

Even reading between the lines of the Complaint, any implied conflict between the enforcement of the challenged federal firearms provisions and Plaintiff SAF's claimed mission of championing the Second Amendment rights of people who "are directly impacted by application of 18 U.S.C. § 922(g)(1) to misdemeanor offenses" (2nd Am. Compl. ¶ 17), is not enough to establish its standing.  *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005).[9]  Courts have routinely rejected such a generalized grievance of a particular class of citizens as establishing an injury for standing purposes.  For example, in *San Diego County Gun Rights Commission v. Reno*, 98 F.3d 1121 (9th Cir. 1996), two associations and three individuals brought suit alleging that they "wish and intend to engage in activities prohibited by" federal laws prohibiting the transfer or  possession of semiautomatic assault weapons.  *Id.* at 1124, 1127.  The Ninth Circuit dismissed for lack of standing.  *See id.* at 1131-32.  The same is true here.  *See Montana Shooting Sports Ass'n v. Holder*, No. CV09-147-M-DWM-JCL, 2010 WL 4102940 (D.

---

[9]   Arguably, many residents of the United States are impacted beneficially by every instance in which a person previously convicted of a crime "similar to plaintiff Schrader's" (2nd Am. Compl. ¶ 17) is unable to obtain a firearm easily on the regulated firearms market.  Plaintiff SAF's reference to its "members and supporters, including Plaintiff Schrader, [who] are directly impacted. . . under a variety of circumstances, including those similar to plaintiff Schrader's," however, appears to be directed at people who have previously been convicted of assaults and may wish to obtain firearms.

Mont. Oct. 18, 2010) (dismissing challenge to intrastate regulation of firearms based, in part, on lack of standing of SAF).

Nor can Plaintiff SAF establish pre-enforcement standing based on a credible threat of prosecution.  Plaintiff SAF does not allege, nor could it, that it has been threatened with any type of prosecution.  *See Seegars v. Ashcroft*, 396 F.3d 1248, 1253 (D.C. Cir. 2005) (injury requires "more than a credible statement . . . of intent to commit violative acts and a conventional background expectation that the government will enforce the law."); *Ord v. District of Columbia*, 587 F.3d 1136, 1143 (D.C. Cir. 2009) (in the context of pre-enforcement challenges, "it is the threat of prosecution which creates the injury in fact required under  standing doctrine." ) (quoting *Navegar, Inc. v. United States*, 103 F.3d 994, 1001 (D.C. Cir. 1997) (ellipsis, brackets, and quotation marks omitted)); *see also Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (same); *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979). Thus, Plaintiff SAF fails to demonstrate standing in its own right.

SAF also cannot establish the required elements of representational standing.  *See Hodgkins*, 677 F. Supp. 2d at 206.  Here,  SAF fails to satisfy at least two of the three prongs of the test. *See Friends of the Earth*, 528 U.S. at 180-81.  First, the Complaint is devoid of any demonstration that SAF's members, other than possibly Plaintiff Schrader, have been affected by the challenged restrictions.  Not a single other potential member of SAF is even identified.  As demonstrated above, Plaintiff Schrader lacks standing to bring this claim in his own right. Accordingly, SAF cannot rely on Plaintiff Schrader to satisfy the first element of the test.

Second, Plaintiff SAF lacks standing because even were it able to identify one or more members with standing to bring the Second Claim for Relief, the individual participation of those

members would be crucial because of the nature of the claim asserted and the relief requested.

*See Friends of the Earth*, 528 U.S. at 180-81.  In the present action, there is no allegation in the

Complaint that SAF has any members with disqualifying convictions who desire to buy firearms.

Moreover, while SAF alleges that its members are "impacted by [the] application of 18 U.S.C. §

922(g)(1) to misdemeanor offenses," it does not explain what this "impact" is or how SAF's

members have specifically been harmed by § 922(g)(1).  Plaintiff SAF fails to allege that either it

or any of its members have actually been prosecuted under either of the provisions it seeks to

challenge.  Although Plaintiff Schrader alleges that two separate firearms transactions were not

consummated based on information accessible to NICS, and that he was specifically informed that

his possession of firearms would be unlawful, his failure to allege that he intends to purchase or

possess those firearms in the future fails to amount to an injury, and his allegation that he

"presently intends to purchase and possess" unidentified firearms is also too vague to amount to

an injury.

   In addition, the Declaratory Judgment Act requires that there be an "actual controversy" at

all times during the pendency of the litigation, and plaintiffs suing under this statute cannot rest

their claims on past injury.  *Golden v. Zwickler*, 394 U.S. 103, 108-10 (1969); *see also Adarand*

*Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11 (1995) ("[T]he fact of past injury, 'while

presumably affording [the plaintiff] standing to claim damages, does nothing to establish a real

and immediate threat that he would again' suffer similar injury in the future.") (quoting *Los*

*Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  In determining whether there is a continuing "actual

controversy" for purposes of the Declaratory Judgment Act, "'the question in each case is whether

the facts alleged, under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Golden*, 394 U.S. at 108 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (emphasis added).  Because Plaintiff SAF's alleged harms amount to no more than a generalized grievance shared in substantially equal measure by a large class of citizens, they do not warrant the exercise of jurisdiction. *Gladstone Realtors*, 441 U.S. at 100; *Warth*, 422 U.S. 490, 499 (1975). *See also McKinney v. United States Dep't of Treasury*, 799 F.2d 1544, 1550-51 (Fed. Cir. 1986).

For all these reasons, Plaintiff SAF lacks standing to maintain the Second Claim for Relief, and the Second Claim for Relief should be dismissed.  Fed. R. Civ. P. 12(b)(1).

## III.   EVEN IF STANDING EXISTS, THE SECOND AMENDED COMPLAINT SHOULD STILL BE DISMISSED

### A.    The First Claim for Relief Fails to State a Valid Legal Claim

In response to Defendants' arguments that the First Claim for Relief failed to identify the proper defendant and to state a valid claim, the Second Amended Complaint cures the former but not the latter defect.  Plaintiffs have not suggested that the *Dearth* decision has any bearing on the First Claim for Relief, and indeed it does not. *See* ECF No. 15.  The First Claim for Relief fails for purely legal reasons and should be dismissed.  Fed. R. Civ. P. 12(b)(6).

Plaintiff Schrader cannot state a valid claim based on the allegedly erroneous interpretation of his Maryland assault conviction as not qualifying under section 922(g)(1). Although neither the D.C. Circuit nor this Court appear to have addressed the issue yet, numerous other courts have held that the dispositive criterion for § 922(g)(1) is the potential sentence, rather than the actual sentence imposed or the felony/misdemeanor designation. *E.g.*, *United States v.*

*Hill*, 539 F.3d 1213, 1219-21 (10th Cir. 2008) ("Because the focus under § 922(g)(1) should be on the crime committed by the defendant, our analysis must center on the maximum statutory sentence" for the underlying offense, and § 922(g)(1) was satisfied where defendant's crime carried maximum penalty of 23 months' imprisonment, even though he was sentenced to just 10 months); *United States v. Jones*, 195 F.3d 205, 207 (4th Cir. 1999) (under § 922(g)(1), "it was plainly irrelevant to Congress whether the individual in question actually receives a prison term; the statute imposes disabilities on one convicted of a crime punishable by imprisonment for a term exceeding one year") (citation omitted); *United States v. Arnold*, 113 F.3d 1146, 1148 (10th Cir. 1997) ("Appellant attempts to rewrite 18 U.S.C. § 922(g)(1) by converting the word 'punishable' into 'punished.' What matters is not the actual sentence which the appellant received, but the maximum possible sentence."); *United States v. Qualls*, 108 F.3d 1019, 1021-22 (9th Cir. 1997) (rejecting defendant's argument that § 922(g)(1) predicate conviction was a misdemeanor because he was sentenced to probation on that offense, which carried a maximum sentence of four years in state prison, and reasoning that "whether a conviction is a felony depends not upon the actual punishment received, but upon whether the conviction is punishable by more than one year in prison,"); *United States v. Melvin*, 27 F.3d 703, 704 n.2 (1st Cir. 1994) ("The statute does not require that the prior conviction be a felony; rather the statute only requires that the offense be punishable for a term exceeding one year."); *United States v. Essig*, 10 F.3d 968, 973 (3rd Cir. 1993) (opining in § 922(g) case that "it is the potential sentence that controls and not the one actually imposed," and rejecting defendant's position "that federal law does not deprive a convict

of his right to possess a firearm unless his sentence actually imposed a prison term of the required length").[10]

This Court should follow the holdings and logic of those decisions because they are persuasive. Of particular note, the Fourth Circuit, which encompasses Maryland, has held that a conviction for common law misdemeanor assault in Maryland does not trigger the exception in § 921(a)(20)(B) despite the absence of a codified maximum penalty for common law assault. *United States v. Coleman*, 158 F.3d 199, 203-04 (4th Cir. 1998) (*en banc*); *United States v. Hassan El*, 5 F.3d 726, 732-33 (4th Cir. 1993), *cert. denied*, 114 S. Ct. 1374 (1994). *Hassan El* involved a challenge to the armed career criminal enhancement statute, 18 U.S.C. § 924(e), which also incorporates the definition of "crime punishable by imprisonment for a term exceeding one year," and the misdemeanor punishable by less than two years in prison exception, set forth in § 921(a)(20)(B). *See Hassan El*, 5 F.3d at 732-33. Hassan El had been convicted in Maryland for misdemeanor common law assault and had received a three-year suspended sentence. *Id.* at 733. Like Plaintiff Schrader here, Hassan El argued that the Maryland misdemeanor assault conviction triggered the § 921(a)(20)(B) exception because assault is classified as a misdemeanor in Maryland and because he actually served no jail time for the conviction. *Id.*

---

[10]  *United States v. Ingram*, 164 F. Supp.2d 310, 317 (N.D.N.Y. 2001) ("What matters when determining whether an offense comes under 18 U.S.C. § 922(g) is not the actual sentence Defendant received. Rather the Court must examine the maximum possible sentence for the charged offense."); *United States v. Rivera*, 467 F. Supp. 37, 40 (D. Conn. 1979) ("The use of the word 'punishable' in the statute evidences an intent by Congress to include within the statute's ambit anyone whose previous conviction exposed him to a possible prison sentence in excess of one year. The actual sentence imposed for the previous conviction has no bearing on the legitimacy of a prosecution under the federal firearms statute."); *Watkins v. United States*, 2008 U.S. Dist. LEXIS 63483, 2008 WL 2857030, *4 (M.D. Fla. July 22, 2008) (§ 922(g)(1) "does not require that the prior conviction be a felony; rather, the statute only requires that the offense be punishable for a term exceeding one year").

The Fourth Circuit soundly rejected Hassan El's argument (which is essentially the same as Plaintiff Schrader's here) and applied § 921(a)(20)(B) as written.  The Fourth Circuit held that because there is no statutory maximum penalty for Maryland misdemeanor assault, the crime is potentially punishable by more than two years in prison and thus does not trigger the exception in § 921(a)(20)(B).  *Id.*   Like *Hassan El*, *Coleman* involved the application of the armed career criminal enhancement statute, 18 U.S.C. § 924(e).  *Coleman*, 158 F.3d at 200.  Coleman had also been convicted in Maryland of misdemeanor assault and given an eighteen month prison sentence, with all but six months suspended.  *Id.* at 201, 203.  Again relying on § 921(a)(20)(B)'s plain language, the Fourth Circuit, sitting *en banc*, held that the misdemeanor  exception does not turn on the actual sentence imposed but, instead, turns on the potential sentence that could have been imposed.  *Id.* at 203-04.  Accordingly, because misdemeanor assault in Maryland is potentially punishable by more than two years in prison, the Fourth Circuit held that the exception in § 921(a)(20)(B) was not triggered.  *See id.*; *see also United States v. Hill*, 539 F.3d 1213, 1219-21 (10th Cir. 2008) (the applicability of § 922(g)(1) turns on the potential sentence, as opposed to the actual sentence); *United States v. Smith*, No. 08-00389-WS, 2009 U.S. Dist. LEXIS 28166, at *14-17 & n.5 (S.D. Ala. Mar. 27, 2009) ("Fundamentally, whether an offense is labeled a felony or a misdemeanor under state law does not matter for §  922(g) purposes . . . What does matter is whether the underlying conviction is one for a 'crime punishable by imprisonment for a term exceeding one year.'"), *aff'd*, No. 10-10280, 2010 U.S. App. LEXIS 20239 (11th Cir. Sept. 30, 2010) (unpublished per curiam).

With regard to Plaintiff Schrader's NICS claim, *Coleman* is directly on point.  The Court should apply the *Coleman* decision here to hold that Plaintiff Schrader cannot state a claim as a

-22-

matter of law against the United States (or any federal official or agency) based on the inclusion of accurate information about his uncontroverted assault conviction in NICS.  *See United States v. Kirksey*, 138 F.3d 120, 123-26 (4th Cir. 1998) (Maryland common law assault can qualify as a "violent felony" for purposes of federal sentencing guidelines but does not do so *per se*), *cert. denied*, 119 S. Ct. 122 (1998).  The operation of Sections § 922(g)(1) and 921(a)(20)(B) does not turn on whether the underlying conviction was for a violent crime, the actual sentence imposed, or the felony/misdemeanor designation.  Rather, the dispositive criterion is whether, as a result of the conviction, the person faced a potential sentence of more than two years in prison.  Plaintiff Schrader undisputedly faced a potential prison sentence greater than two years as a result of his assault conviction, and his NICS claims thus fails as a matter of law.

Moreover, particularly because Plaintiff Schrader's Maryland assault conviction actually involved violence, his offense falls squarely within the ambit of section 922(g)(1) and 921(a)(20)(B), which are intended to keep firearms out of the hands of citizens convicted of qualifying offenses.  *See United States v. Williams*, 616 F.3d 685, 693-94 (7th Cir. 2010), *cert. denied*, No. 10-593, 2010 U.S. LEXIS 9533 (U.S. Dec. 6, 2010).[11]

---

[11]   *See also United States v. Ray*, No. 09-4019, 2009 U.S. App. LEXIS 22725, at *4-8 (4th Cir. Oct. 16, 2009) (unpublished per curiam) (sentencing guidelines enhancement was triggered where the defendant was convicted of Maryland common law assault that involved the defendant beating his victim); *cf. Coleman*, 158 F.3d at 202-03 (enhancement statute was triggered where the defendant was convicted of Maryland common law assault based on assaulting a police officer and pointing a gun in his direction); *Kirksey*, 138 F.3d at 125-26 (sentencing guidelines enhancement was triggered where the defendant was convicted of Maryland common law assault based on the charge that he used a knife to try to steal money from the victim and kicked the victim); *United States v. Frazier-El*, 10 F. Supp. 2d 508, 512 (D. Md. 1998) (enhancement statute was triggered where the Maryland common law assault conviction involved the defendant threatening a police officer with a knife), *aff'd*, 204 F.3d 553 (4th Cir. 2000).

Thus, the Court should apply *Coleman* here and dismiss the claim regarding Plaintiff Schrader's NICS information because the allegations in the Second Amended Complaint fail to state a valid claim.  Fed. R. Civ. P. 12(b)(6).

**B.      The Second Claim Fails Because Section 922(g)(1) is Constitutional**

Even if either Plaintiff Schrader or Plaintiff SAF had standing to bring the Second Claim for Relief – which they do not – it should still be dismissed.  The D.C. Circuit did not address the constitutionality of section 922(g)(1) in *Dearth*.  In fact, the constitutionality of section 922(g)(1) appears to be an issue of first impression in this Circuit, but other federal appellate courts to have considered the question have uniformly upheld section 922(g)(1) as constitutional.  *See United States v. Williams*, 616 F.3d at 693 (rejecting a post-*Heller* challenge to § 922(g)(1) and listing other Circuit Courts that have similarly ruled, post-Heller, that § 922(g)(1) does not violate the Second Amendment).[12]  The relief that Plaintiffs seek -- a declaration that § 922(g)(1) is unconstitutional in conjunction with 921(a)(20)(B) -- is unprecedented, and the Court would have to depart radically from the current body of law interpreting the Second Amendment to reach that result.[13]

---

[12]     *United States v. Rozier*, 598 F.3d 768, 770-71 (11th Cir. 2010), *cert. denied*,130 S. Ct. 3399 (2010); *United States v. Vongxay*, 594 F.3d 1111, 1114-18 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 294 (2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), *cert. denied*,130 S. Ct. 1686 (2010); *United States v. Stuckey*, No. 08-0291-cr, 2009 U.S. App. LEXIS 5704, at **4-5 (2d Cir. Mar. 18, 2009) (unpublished summary order); *United States v. Anderson*, 559 F.3d 348, 352 n.6 (5th Cir. 2009), *cert. denied*, 129 S. Ct. 2814 (2009); *United States v. Frazier*, No. 07-6135, 2008 U.S. App. LEXIS 24023, at **15-18 (6th Cir. Nov. 19, 2008) (unpublished), *cert. denied*, 129 S. Ct. 1652 (2009); *United States v. Brunson*, No. 07-4962, 2008 U.S. App. LEXIS 19456, at **3 (4th Cir. Sept. 11, 2008) (unpublished per curiam); *United States v. Irish*, No. 06-4082, 2008 U.S. App. LEXIS 16304, at **1 (8th Cir. July 31, 2008) (unpublished per curiam).

[13]     This Court has rejected a Second Amendment challenge to the post-*Heller* firearms

(continued...)

The Supreme Court has recognized the presumptive validity of laws prohibiting firearm possession by "felons." *District of Columbia v. Heller*, 128 S. Ct. 2783, 2816-17 (2008). Indeed, in *McDonald v. City of Chicago*, the Supreme Court underscored *Heller's* affirmation "that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3047 (2010). Because Plaintiff Schrader's admitted crime was subject to a term of imprisonment exceeding two years, the conviction triggers the disqualification in Sections 922(g)(1) and 921(a)(20)(B), and he should be considered to be a convicted felon for purposes of his Second Amendment challenge. *See Coleman*, 158 F.3d at 203-04 . Under such circumstances, courts have flatly rejected both facial and as-applied challenges to the constitutionality of section 922(g)(1) based on *Heller*'s statement that "nothing in its opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . ." *Heller*, 128 S. Ct. at 2816-17. *See Vongxay*, 594 F.3d at 1115 (citing *Heller*, 128 S. Ct. at 2816-17, and rejecting facial challenge to § 922(g)(1)); *Rozier*, 598 F.3d at 771 (same ); *McCane*, 573 F.3d at 1047 (same); *Stuckey*, 2009 U.S. App. LEXIS 5704, at **5 (same); *Anderson*, 559 F.3d at 352 n.6 (same); *Frazier*, 2008 U.S. App. LEXIS 24023, at **17 (same); *Brunson*, 2008 U.S. App. LEXIS 19456, at **3 (same); *Irish*, 2008 U.S. App. LEXIS 16304, at **1 (same); *United States v. Khami*, No. 08-2437, 2010 U.S. App. LEXIS 1649, at **17-21 (6th Cir. Jan. 26, 2010) (citing *Heller* and rejecting facial and as-applied challenges to § 922(g)(1)), *cert. denied*, 130 S. Ct. 3345 (2010);

---

[13] (...continued)
restrictions that the District of Columbia passed in response to the Supreme Court's ruling in *Heller*. *See Heller v. District of Columbia*, 698 F. Supp. 2d 179, 181 (D.D.C. 2010) (*Heller II*). *Heller II* was appealed to the D.C. Circuit, where the case is identified as No. 10-7036, and pending as of the filing of this motion.

*United States v. Schultz*, No. 1:08-CR-75-TS, 2009 U.S. Dist. LEXIS 234, at *3-7 (N.D. Ind. Jan.

5, 2009) (same); *United States v. Henry*, No. 08-20095, 2008 U.S. Dist. LEXIS 60780, at *1-3

(E.D. Mich. Aug. 7, 2008) (citing *Heller* and rejecting an as-applied challenge to § 922(g)(1)).

Simply stated, *Heller* and *McDonald* foreclose Plaintiff Schrader's claim that 922(g)(1) is

unconstitutional under the allegations here because his possession of firearms is not Second

Amendment activity.

But even if the Court proceeds beyond *Heller* and *McDonald*, it should follow the

persuasive logic of other courts finding that section 922(g)(1) is constitutional. This analysis

ordinarily consists of two parts. In the initial stage, the Court determines whether the challenged

conduct falls within the protection of the Second Amendment. Only if it does would the Court

need to apply some level of "means-ends" scrutiny to establish whether the challenged provisions

pass constitutional muster. *See, e.g., United States v. Williams*, 616 F.3d at 691.

In this case, the first question amounts to whether those convicted of misdemeanor assault,

a crime punishable by more than two years in prison, are outside the scope of the Second

Amendment's protection. *See Heller*, 128 S. Ct. at 2822 ("[a]ssuming that Heller is not

*disqualified* from the exercise of Second Amendment rights, the District must permit him to

register his handgun and must issue him a license to carry it in the home.") (emphasis supplied).[14]

As this Court has held, the Second Amendment right recognized in *Heller* is "'the right of

law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Heller II*, 698 F.

Supp. 2d at 188 (citing *Heller*, 128 S. Ct. at 2821). Convicted criminals like Plaintiff Schrader,

---

[14] *See Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 445 F.3d 470, 476-77 (D.C. Cir. 2006) (reviewing the criteria and analysis for determining the existence of a fundamental constitutional right), *aff'd*, 495 F.3d 695 (D.C. Cir. 2007) (*en banc*).

whose crimes are punishable by imprisonment for more than two years, are not "law abiding, responsible citizens," so their possession of firearms is not covered by the Second Amendment.

Moreover, neither the passage of time nor the fact that Plaintiff Schrader's assault did not involve the use of a gun compels a different result.  Indeed, the constitutionality of Section 922(g)(1) does not turn these factors or on whether the underlying crime involved violence.  *See United States v. Oppedisano*, No. 09-CR-0305 (JS), 2010 U.S. Dist. LEXIS 127094, at *5-8 (E.D.N.Y. Nov. 30, 2010) (applying intermediate scrutiny and rejecting a Second Amendment challenge to § 922(g)(1) where the defendant argued that his underlying convictions for reckless endangerment and driving while intoxicated were nonviolent and thus did not properly trigger the statute); *United States v. Jones*, 673 F. Supp. 2d 1347 (N.D. Ga. 2009)(rejecting a Second Amendment challenge where the defendant argued that § 922(g)(1) was not properly triggered because his underlying convictions were more than fourteen years old and because he was not alleged to have unlawfully used the firearm at issue); *Schultz*, 2009 U.S. Dist. LEXIS 234, at *3-5 (rejecting an as-applied challenge to § 922(g)(1) where the underlying felony conviction was for failing to pay child support, the conviction was twenty years old, and the conviction had only resulted in a term of probation); *see also Vongxay*, 594 F.3d at 1114 (rejecting a facial challenge to § 922(g)(1) where the defendant had prior non-violent felony convictions); *Khami*, 2010 U.S. App. LEXIS 1649, at **21 (rejecting an as-applied challenge to § 922(g)(1) where the defendant had prior felony drug convictions).  Consequently, Plaintiff Schrader's activities are excluded from the coverage of the Second Amendment, and the constitutional claim fails.[15]

---

[15]   The Supreme Court has not "upheld different treatment based upon the felon/misdemeanor distinction" with respect to the constitutional rights to a jury trial or counsel.  The terms "crimes"

(continued...)

Even were the alleged conduct covered by the Second Amendment, however, section 922(g)(1) in combination with 18 U.S.C. § 921(a)(20)(B)'s classification of Plaintiff Schrader is constitutional under an intermediate standard of review.[16] Plaintiff Schrader admits that he has committed a crime involving at least some violence (though the violence is not required for the statute to pass constitutional muster). *See* 2nd Am. Compl. ¶¶ 10-11. The balancing for Plaintiff Schrader's Second Amendment right is different for that of a law-abiding citizen such as Heller (who was a D.C. special policeman). The government has an important interest in limiting possession of firearms based on the past criminal history of certain of its citizens, and the means of achieving it are substantially related to the objective of keeping firearms out of the possession

---

[15] (...continued)
in Article III, Section 2, and "criminal prosecutions" in the Sixth Amendment, apply to some misdemeanor offenses. *See, e.g., Duncan v. Louisiana*, 391 U.S. 145, 159-62 (1968) (right to jury trial applies to all state criminal cases excluding petty offenses); *Lewis v. United States*, 518 U.S. 322, 326 (1996) ("An offense carrying a maximum prison term of six months or less is presumed petty, * * * ."). Moreover, while the right to counsel applies to all felony cases, it applies to many misdemeanor cases as well. *See Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972) ("[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.").

[16] The Supreme Court "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions." *Heller*, 128 S. Ct. 2821. In a footnote, however, the Supreme Court rejected the notion that rational basis scrutiny was appropriate, concluding that this test "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, * * * ." *Id.* at 2817 n.27. The Court also rejected an "interest-balancing" test proposed by Justice Breyer in dissent. *Id.* at 2851-53; *cf. Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1 (2003) (upholding Connecticut's sex offender registration law and finding question whether a particular offender is currently dangerous is irrelevant under this offense-based regime).

of people convicted of qualifying crimes. *See Williams*, 616 F.3d at 693-94 (suggesting that some

form of intermediate scrutiny analysis is appropriate).[17]

    Post-*Heller*, courts have similarly recognized that the prohibitions of Section 922(g) can

be constitutionally applied to misdemeanants and have specifically rejected constitutional

challenges by misdemeanants convicted of domestic violence. *See United States v. White*, 593

F.3d 1199, 1205-06 (11th Cir. 2010) (interpreting the Supreme Court's reference in *Heller* to the

"longstanding prohibition on the possession of firearms by felons" as a reference to § 922(g)(1));

*United States v. Skoien*, 614 F.3d 638, 639-45 (7th Cir. 2010) (*en banc*) (rejecting Second

Amendment challenge to 18 U.S.C. § 922(g)(9), which prohibits firearm possession by

misdemeanants convicted of domestic violence); *White*, 593 F.3d at 1205-06 (same); *United*

*States v. Smith*, No 2:10-cr-00066, 2010 U.S. Dist. LEXIS 98511, at *18-44 (S.D. W.Va. Sept. 20,

2010) (same); *United States v. Engstrum*, 609 F. Supp. 2d 1227, 1231-35 (D. Utah 2009) (same);

*United States v. Booker*, 570 F. Supp. 2d 161, 163-64 (D. Me. 2008) (same); *but see United States*

*v. Chester*, _ F.3d _, 2010 WL 5396069 (4th Cir. Dec. 30, 2010) (remanding to district court for a

determination as to whether there is a "reasonable fit between the important object of reducing

domestic gun violence and [Section] 922(g)(9)'s permanent disarmament of all domestic-violence

misdemeanants."). The Seventh Circuit has expressly declared that "[c]onstitutionally speaking,

---

[17]    At least one court has held that section 922(g)(1) is constitutional under a standard appearing
more demanding than intermediate scrutiny without expressly holding that a strict scrutiny
standard applied. *United States v. Ligon*, No. 3:04-cr-00185-HDM, 2010 U.S. Dist. LEXIS
116272, at *17 (D. Nev. Oct. 20, 2010) ("Even if the court applies the doctrine of strict scrutiny .
. . defendant's argument fails."), *appeal docketed*, No. 10-17678 (9th Cir. Nov. 24, 2010). In
*Ligon*, the court rejected arguments that the individual's non-violent criminal behavior not
involving the use of a gun prevented the statute from being narrowly tailored as applied to him.
*See id*. at ** 17-20.

there is nothing remarkable about the extension of federal firearms disabilities to persons convicted of misdemeanors, as opposed to felonies." *Gillespie v. City of Indianapolis*, 185 F.3d 693, 706 (7th Cir. 1999).[18]  *Heller* made clear that its list of Second Amendment "exceptions" provided only "examples" of "presumptively lawful" regulations, and warned lower courts not to view these examples as "exclusive." *Heller*, 128 S. Ct. at 2817 n.26.  At a minimum, therefore, lower courts must apply the same presumption to any related laws that are not logically distinguishable. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (noting "the basic principle of justice that like cases should be decided alike").  Because Section 922(g)(1) "does not distinguish between the violent and non-violent offender[,]" *White*, 593 F.3d at 1206, this Court should uphold the constitutionality of Section 922(g)(1) as applied in conjunction with Section 921(a)(20)(B) consistent with the presumed lawfulness of Section 922(g)(1) that the Supreme Court recognized in *Heller*.

Accordingly, the Court should find that section 922(g)(1) is constitutional and dismiss the Second Claim for Relief because it fails to state a claim.  Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570.

---

[18]    Likewise, in *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court concluded that the apprehension by use of deadly force of an apparently unarmed and non-dangerous fleeing suspect was a "seizure."  In so holding, the Court declined to adopt the common law distinction between felons and misdemeanants who flee.  *Id.* at 12-15.  Instead, the Court noted that "today the distinction is minor and often arbitrary," and described as "untenable" "the assumption that a 'felon' is more dangerous than a misdemeanant," noting that "numerous misdemeanors involve conduct more dangerous than many felonies."  *Id.*  There is therefore no reasonable basis for concluding that the "presumption" of lawfulness afforded to laws that disarm felons should not be extended to a narrowly defined category of misdemeanants as well.

## CONCLUSION

For all these reasons, defendants respectfully request that the Court grant this motion and dismiss this case in its entirety.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Civil Chief

By:     /s/ *Jane M. Lyons*
JANE M. LYONS, D.C. Bar. # 451737
Assistant United States Attorney
555 Fourth St., N.W. - Room E4104
Washington, D.C.  20530
Phone: (202) 514-7161
Fax: (202) 514-8780
jane.lyons@usdoj.gov