## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JEFFERSON WAYNE SCHRADER, _et al._** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-1736(RMC)** |
| | ) | |
| **ERIC HOLDER, Attorney General, _et al._,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Back in 1968 when Jefferson Schrader was 20 years old and in the Navy, he was in a fistfight with a member of a gang that had previously attacked him on the street in Annapolis, Maryland. He was arrested and convicted in a Maryland State court of common law misdemeanor assault and battery. He received a $100 fine and no jail time. Because it was an uncodified common law violation, no State statute specified a maximum term of incarceration. Forty years later, as Mr. Schrader attempted to purchase firearms, his attempts were rebuffed when he was identified in the National Instant Criminal Background Check System ("NICS") as ineligible since his 1968 conviction could have resulted in a sentence of two years or more and federal law prohibited his purchase. _See_ 18 U.S.C. § 922(g).

Mr. Schrader challenges the government's application of § 922(g) to his facts and asserts that he has a constitutional right under the Second Amendment to purchase firearms. All parties recognize that federal law bars anyone convicted of certain crimes from purchasing guns, including those convicted of a State-law misdemeanor that is punishable by more than two years in prison. _See_ 18 U.S.C. § 921(a)(20)(B). The questions presented are whether an uncodified

misdemeanor of a garden-variety sort comes within the federal definition and whether, if so, such treatment violates Mr. Schrader's rights under the Second Amendment. The government moves to dismiss and Mr. Schrader cross moves for summary judgment.

## I. FACTS

The relevant facts are simple and, unless otherwise stated, uncontested. In July of 1968, Mr. Schrader was enlisted in the Navy and stationed in Annapolis, Maryland. While walking on the streets of Annapolis, Mr. Schrader was assaulted by a street gang for allegedly entering their territory. Sometime later, on or about July 23, 1968, Mr. Schrader was again walking in Annapolis and encountered one of the gang members who had previously assaulted him.[1] A fight broke out, and Mr. Schrader punched the gang member. A nearby police officer arrested Mr. Schrader for assault and battery and disorderly conduct. Eight days later, Mr. Schrader was found guilty of assualt and battery and ordered to pay a $100 fine and $9 in court costs. Mr. Schrader paid the fine and costs and was released. Aside from this incident, Mr. Schrader has no other convictions and has had no other meaningful encounters with law enforcement.

Forty years later, Mr. Schrader attempted to acquire a shotgun and a handgun for self-defense purposes. As required by the Brady Handgun Violence and Prevention Act, Pub. L. 103-159, 107 Stat. 1536, Mr. Schrader's name and information was checked against the National

---

[1] Defendants view with skepticism Mr. Schrader's statement that he was previously assaulted by a street gang but have no basis to deny the account. Even if the account were properly disputed it is not material to this decision. Moreover, in granting Defendants' motion, the Court views the facts in a light most favorable to Mr. Schrader. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Instant Criminal Background System ("NICS") to see if he was eligible to purchase a firearm.
The background check revealed Mr. Schrader's prior conviction, and he was deemed ineligible.

Mr. Schrader wrote to the FBI and asked why his firearms transactions had been
cancelled.  On June 3, 2009, the FBI advised that it had made a "denial decision" under 18
U.S.C. § 922(g)(1) on the basis of the 1968 Maryland misdemeanor common law assault and
battery conviction.  The FBI further advised him to dispose of or surrender any firearms he might
possess or he could face criminal prosecution.  Because the common law misdemeanor for which
Mr. Schrader was convicted had no legislatively-capped punishment range, the government treats
him as it would a convicted felon for the purpose of federal law, banning him for life from
possessing any firearm for any purpose and listing his name in the NICS database as disqualified
from owning firearms.

Mr. Schrader complains that the government's expansive reading of § 922(g)(1) is
mistaken.  Even assuming that the federal scheme could be read to encompass common law
misdemeanants, he complains that the government's attempt to limit his right to purchase guns
under § 922(g)(1) fails constitutional scrutiny under the Second Amendment.  Mr. Schrader and
the Second Amendment Foundation[2] filed this lawsuit seeking an order requiring Defendants to
remove Mr. Schrader's firearms disability from NICS pursuant to 18 U.S.C. § 925(a) and
permanently enjoining Defendants from enforcing 18 U.S.C. § 922(g)(1) with respect to his

---

[2]   The Second Amendment Foundation is a non-profit membership organization
incorporated under the laws of the State of Washington, with its principal place of business in
Bellevue, Washington.  It says that it has over 650,000 members and supporters nationwide.  2nd
Am. Compl. ¶ 2.

uncodified common law misdemeanor offense on the ground that it has no statutory punishment criteria.

## II. LEGAL STANDARDS

### A. Jurisdiction and Venue

The Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 2201 (Declaratory Judgment Act). Venue is proper under 28 U.S.C. § 1391.

### B. Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the

complaint as exhibits or incorporated by reference, and matters about which the court may take

judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### C. Standing

A plaintiff bears the burden of establishing his own standing for each claim that

he makes. *Northeastern Fla. Chapter, Associated Gen. Contractors of Am. v. City of

Jacksonville*, 508 U.S. 656, 663 (1993); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

(1002). Federal courts are courts of limited jurisdiction and a plaintiff must show a "justiciable

controversy" with the defendant—one that is "definite and concrete, touching the legal relations

of parties having adverse legal interests." *Aetna Life Ins. Co. V. Haworth*, 300 U.S. 227, 240-41

(1937). To establish constitutional standing, a plaintiff must show an "injury-in-fact," which

means "an invasion of a legally protected interests that is (a) concrete and particularized, and (b)

actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 & n.1. A plaintiff

must also demonstrate a "causal connection between the injury and the conduct complained of."

*Id.* Finally, the injury must be redressable by the relief sought in the complaint. *Id.* at 561.

Organizations can establish standing in one of two ways. First, they can

demonstrate injury, causality, and redressability in the same way as a traditional plaintiff. *See,

e.g., American Legal Found. v. FCC*, 808 F.2d 84, 89 (D.C. Cir. 1987) (citing *Havens Realty

Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). Second, an organization can have

representational standing "on behalf of its members when its members would otherwise have

standing to sue in their own right, the interests at stake are germane to the organization's

purpose, and neither the claim asserted nor the relief requested requires the participation of

indivudual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 181 (2000).

## III.  ANALYSIS

### A.  Standing

The government contests the standing of both Mr. Schrader and the Second Amendment Foundation.  According to the government, Mr. Schrader lacks standing for three reasons.  First, he fails to identify where, when or how he intends to purchase or possess a handgun and long gun.  Second, his past inability to acquire or possess a firearm legally is not presently harming him so that there is no existing "actual controversy." *See Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987).  Third, the allegations in the Second Amended Complaint are too vague to find that any injury concerning future firearms purchases or possession is traceable to the Defendants or redressable by the Court.

Mr. Shrader presently intends to purchase and possess a handgun and long gun for self-defense within his home.  He does not face any of the typical disqualifying barriers under federal gun control laws.  He is not under indictment, has never been convicted of a felony or misdemeanor crime of domestic violence, is not a fugitive from justice, is not a user of unlawful controlled substances or an addict, has never been adjudicated as having a mental defect or been committed to a mental institution, has not been discharged under dishonorable circumstances, has never renounced his citizenship, and has never been the subject of a restraining order relating to an intimate partner.  *See* 18 U.S.C. § 922(g).  He is also fully qualified to possess firearms under the laws of Georgia, his State of citizenship.

Mr. Schrader has been denied the right to purchase guns on two occasions because he is listed in the NICS database as disqualified.  He complains that this listing prevents him, now and into the future, from any such exercise of his Second Amendment rights.  The government does not dispute this fact but protests that his future intentions are too imprecise.

The Court disagrees. The D.C. Circuit has "consistently treated a license or permit denial pursuant to a state or federal administrative scheme as an Article III injury." *Parker v. District of Columbia*, 370 F.3d 376 (2007) (collecting cases), *aff'd sub nom. Dist. of Columbia v. Heller*, 554 U.S. 570 (2008).  The FBI explained its denial decision in 2009 and Mr. Schrader sued in 2010.  There is not a "pre-enforcement challenge," as to which the Circuit has concluded a plaintiff lacks standing due to the absence of an injury-in-fact.  *Id.* at 374 (citing *Seegars v. Gonzales*, 393 F.3d 1248 (D.C. Cir. 2005)).  Moreover, Mr. Schrader presents "an actual and well-founded fear that the law will be enforced against [him.]" *Id.* at 375 (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383 (1988)).  The Court finds no ambiguity, undue delay, or uncertainty here about Mr. Schrader's suit or claims.  His standing is at least as secure as Dick Heller in *Parker v. D.C.  See also Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011) (finding standing when plaintiff alleged that he intended to purchase and store a firearm in the United States and that the federal regulatory scheme thwarted his continuing desire to purchase a firearm).

Because the Second Amendment Foundation has not raised issues separate from those raised by Mr. Schrader, the Court need not decide whether it has standing.  *See Dearth v. Holder*, 641 F.3d 499, 503 n.* (2011) (citing *Environmental Action, Inc. v. FERC,* 939 F.2d 1057, 1061 n.* (D.C. Cir. 1991)).

### B. Applicability of § 922(g)

Although § 922(g)(1) is colloquially referred to as the felon-in-possession statute, that description is underinclusive. *See United States v. Williams*, No. 09-00044-CG-C, 2009 U.S. Dist. LEXIS 70299, at *3 (S.D. Ala. Aug. 11, 2009) ("In fact, felon-in-possession is a misnomer because it is possible under 18 U.S.C. § § 922(g)(1) and 921(a)(20)(B) for a misdemeanor conviction to disqualify a person from possessing a firearm."). The relevant language prohibits any person convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing firearms. 18 U.S.C. § 922(g)(1). The statute defines the term "crime punishable by imprisonment for a term exceeding one year" to exclude "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20). The question, thus, is whether Mr. Schrader's common law assault and battery conviction is a crime "punishable by a term of imprisonment of two years or less." *Id.*

Neither party disagrees with this analysis. Where they part company is in its application to these facts. The United States contends that when a common law crime is involved, for which a State legislature has set no specific penalty, a court's sentencing discretion in limited only by the bar to cruel and unusual punishment guaranteed by the Eighth Amendment.[3] By this calculus, Mr. Schrader's assault and battery conviction constituted a State misdemeanor punishable by more than two years. Mr. Schrader responds that uncodified common-law offenses are not "punishable" by any particular statutory criteria and, therefore, do

---

[3] The Eight Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

not fall within the purview of § 922(g) at all.  The Government complains that adopting Mr.

Schrader's reading of § 922 would eliminate all uncodified common law offenses, regardless of

their violence or seriousness, from precluding an individual from carrying firearms.  Mr.

Scharder responds that adopting the Government's reading of § 922 would lump even the

simplest common law offense with violent felonies.

> While the parties spend time combing history and dictionaries to make their

arguments, the Court need not tarry.  There is one insurmountable hole in Mr. Schrader's logic.

His argument that the lack of *statutory* criteria makes a common law crime not "punishable"

within the meaning of federal law imports a requirement that neither the law nor logic requires or

suggests.  Whether any particular State has codified its criminal common law cannot limit the

effect of federal law.  The absence of a legislatively-defined sentence leaves sentencing to the

discretion of the judge, limited only by constitutional (federal or State) provisions.  Mr. Schrader

does not argue, nor could he, that a Maryland State court judge could not have sentenced him, or

another offender of the same common law crime, to more than two years in jail.[4]  Thus, his

offense was "punishable" by a term of more than two years in jail.

---

[4]  The actual term of the sentence given is not controlling; only the possibility of punishment of more than two years for a misdemeanor matters for purposes of § 922(g)(1).  *See, e.g., United States v. Hill*, 539 F.3d 1213, 1219-21 (10th Cir. 2008) (Section 922(g)(1) was satisfied where maximum federal penalty was 23 months imprisonment even though defendant was only sentenced to ten months); *United States v. Jones*, 195 F.3d 205, 207 (4th Cir. 1999) ("[I]t was plainly irrelevant to Congress whether the individual in question actually receives a prison term; the statute imposes disabilities on one convicted of a crime punishable by imprisonment for a term exceeding one year."); *United States v. Arnold*, 113 F.3d 1146, 1148 (10th Cir. 1997) ("Appellant attempts to rewrite 18 U.S.C. § 922(g)(1) by converting the word 'punishable' into 'punished.'  What matters is not the actual sentence . . . but the maximum possible sentence."); *United States v. Qualls*, 108 F.3d 1019, 1021-22 (9th Cir. 1997).

Mr. Schrader further argues that the federalism concerns that undergird our government structure in the United States allow only a State's legislature to decide how harshly it chooses to punish its own crimes and Congress defers to the wisdom of that localized judgment. *See United States v. McKenzie*, 99 F.3d 813, 820 (7th Cir. 1977) ("[W]hile states may vary on what offenses are punishable by a term exceeding one year, it does not alter Congress' intent to keep guns out of the hands of anyone that a given state determines to be a felon."). However, the choice of a State legislature to rely on judicial discretion at sentencing on certain common law misdemeanors represents a legislative choice just as the adoption of a statute would.  To the extent that reliance on judicial discretion represents legislative "inaction, " only the citizens of the State might change that, not the federal government.[5]  Giving "punishable" its common sense definition does not undermine Maryland's ability to choose how to punish its citizens who are convicted of State crimes.

Moreover, if Maryland wanted to limit the reach of § 922 to misdemeanats who have been convicted of crimes that carry a *statutory* penalty, it knew how to do so.  *See*  MD Public Safety Code Ann. § §  5-101, 5-133 (Maryland's gun control statute prohibits gun ownership by a person convicted of a "misdemeanor in the State that carries a *statutory penalty* of more than 2 years . . . .") (emphasis added).   Maryland's gun control statute indicates that the State legislature appreciated the difference between codified and uncodified penalties and chose

---

[5]  In fact, since Mr. Schrader's conviction in 1968, the State of Maryland has codified the common law crime of assault.  First Degree Assault is a felony punishable by up to 25 years imprisonment and covers assault that causes or attempts to cause serious physical injuries or that is carried out with a firearm.  *See* Md. Criminal Law Code Ann. § 3-202.  Second Degree Assault is a misdemeanor punishable by up to 10 years imprisonment and covers all other forms of assault.  *See id.* at § 3-203.

-10-

not to make such a distinction before it codified this common law criminal misdemeanor. Again, the silence of the State legislature is as telling as its post-1968 action.

The Fourth Circuit Court of Appeals encompasses Maryland, and the United States urges the Court to adopt the reasoning and holdings of Fourth Circuit decisions on point. *See United States v. Coleman*, 158 F.3d 199, 203-04 (4th Cir. 1998) (*en banc*);[6] *United States v. Hassan El*, 5 F.3d 726, 732-33 (4th Cir. 1993). Mr. Schrader argues that these decisions are flawed and unpersuasive and predated *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held that the Second Amendment protects an individual right to keep and bear arms. Unless there is a possible Second Amendment problem, however, the Court is otherwise persuaded by the Fourth Circuit.

Two more points should be added. First, because Mr. Schrader's Maryland assault and battery conviction actually involved violence, which he admits, his offense was of a kind to which § 922(g)(1) speaks to keep firearms out of the hands of violent offenders. Second, clarity of the criminal laws is necessary for both law enforcement and the people to know and foresee when the law applies. In 1968, Mr. Schrader had no idea that Congress would later pass the Brady Handgun Violence and Prevention Act. As to the precise question here, and without intending any broader application, the Court concludes that federal criminal law enforcement cannot depend on divining the meaning of legislative silence in the 50 States.

---

[6] *Coleman* overruled *United States v. Schultheis*, 486 F.2d 1331 (4th Cir. 1973), which had adopted the practice of using the actual sentence imposed on common law offenders to determine status, rather than the range of incarceration for which a crime was "punishable."

## B.  Alleged Second Amendment Violation

Mr. Schrader also advances a constitutional claim: reading § 922(g) as broadly as the government proposes would run afoul of the Second Amendment as construed by *District of Columbia v. Heller*.  *Heller* decided that the Second Amendment confers an individual right to keep and bear arms and not just a collective right to participate in State militias.  554 U.S. at 592 (finding the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation"); *id.* at 594 ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*." (emphasis in original)).

Mr. Schrader's desire to have one or more guns in his house for safety echoes through American history.  *Id.* at 611 (quoting *Johnson v. Tompkins*, 13 F. Cas. 840, 850, 852 (CC Pa. 1833) ("a citizen has 'a right to carry arms in defense of his property or person, and to use them, if either were assailed with such force, numbers or violence as made it necessary for the protection or safety of either.'")).  He correctly relies on *Heller*'s exposition of the history and application of the Second Amendment to argue that there is an individual constitutional right to "keep and bear arms."  U.S. Const. amend II.  *See also Heller*, 554 U.S. at 628 (noting "the inherent right of self-defense has been central to the Second Amendment right").

Section III of *Heller*, however, notes that "[l]ike most rights, the right secured by the Second Amendment is not unlimited."  *Heller*, 554 U.S. at 626.  Most importantly for present purposes, the Supreme Court specified that:

> [N]othing in our opinion should be taken to cast doubt on
> longstanding *prohibitions on the possession of firearms by felons*
> and the mentally ill, or laws forbidding the carrying of firearms in
> sensitive places such as schools and government buildings, or laws
> imposing conditions and qualifications on the commercial sale of
> arms.*
>
> *We identify these presumptively lawful regulatory measures only
> as examples . . . .

*Heller*, 554 U.S. at 626-27 & n.26.  In the decision under review in *Heller*, known below as

*Parker v. District of Columbia*, the D.C. Circuit made the same point: "Personal characteristics,

such as insanity or felonious conduct, . . . make gun ownership dangerous to society . . . ."

*Parker*, 478 F.3d at 399.

      *Parker* cited *Lewis v. United States*, 445 U.S. 55, 65 n.8 (1974), for the

proposition that "convicted felons may be deprived of their right to keep and bear arms."  478

F.3d at 399.  *Lewis*, in turn, had approvingly cited *United States v. Johnson*, 497 F.2d 34 (4th

Cir. 1974), for its holding that § 922(g) does not violate the Second Amendment because "the

Second Amendment only confers a collective right of keeping and bearing arms which bear a

'reasonable relationship to the preservation or efficiency of a well regulated militia.'"  *Lewis*, 445

U.S. at 65 n.8 (citation omitted).  *Parker* and *Heller*, of course, discarded the theory that the

Second Amendment does not guarantee an individual right.  The D.C. Circuit explained its

reliance on the result, if not the rationale, of *Lewis* and *Johnson*, by instructing that regulations

on the use and ownership of guns "promote the government's interest in public safety consistent

with our common law tradition . . . [and] do not impair the core conduct upon which the right

was premised."  *Parker*, 478 F.3d at 399.

It must be noted that the definition which so offends Mr. Schrader's constitutional sensibilities was added to § 921(a) on October 22, 1968, the year of his infamous encounter with a gang member whom he punched on the streets of Annapolis. *See Gun Control Act of 1968*, Pub. L. 90-618, 82 Stat. 1213. The law was adopted "to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence" but not to "place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens . . . ." *Id.* The bill amended 18 U.S.C. § 921(a)(20)(B) to provide that the term "'crime punishable by imprisonment for a term exceeding one year' shall not include . . . (B) any State offense (other than one involving a firearm or explosive) classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." *Id.* While § 921(a)(20)(B) no longer includes the parenthetical phrase, the language which covers Mr. Schrader's old crime was made a part of the statute in the very year of its commission. No challenge to the definition has been raised successfully in the decades since. Its hoary age strongly suggests no constitutional impediment and, indeed, the Court finds none under *Heller*'s reading of the Second Amendment or the caselaw that preceded *Heller*.

## IV. CONCLUSION

Mr. Schrader presents neither a statutory claim nor a constitutional one against the enforcement of 18 U.S.C. § § 922(g)(1) and 921(a)(20)(B) against him. His real complaint is with the 1993 Brady Handgun Violence Prevention Act which ordered the Attorney General to establish and rely on NICS for nationwide tracking of federal and State crimes. Mr. Schrader may have completely forgotten his fistfight of 40 years ago but this Court cannot say that the FBI's memory of it was faulty in any respect. The Defendants' motion to dismiss [Dkt. # 20]

-14-

will be granted, and Mr. Schrader's cross motion for summary judgment [Dkt. # 21] will be

denied.  A memorializing Order accompanies this Memorandum Opinion.

Date: December 23, 2011                              _____/s/_____

                                                    ROSEMARY M. COLLYER
                                                    United States District Judge